[Crim. No. 2475. Third Dist. Aug. 3, 1954.]

THE PEOPLE, Respondent, v. TONY LIMA, Appellant.

30

Chargin & Briscoe, John L. Briscoe, Public Defender, and Walter F. Calcagno for Appellant.

Edmund G. Brown, Attorney General, Gail A. Strader, Deputy Attorney General, and Richard Johnson, Deputy District Attorney for Respondent.

VAN DYKE, P. J.—Appellant and two nonappealing co-defendants, namely one Aldo and one Guzmano, were charged by indictment with criminal conspiracy to commit grand theft. Appellant and Guzmano were charged with grand theft and by another count Guzmano and Aldo were also charged with grand theft. All three were convicted as charged. Appellant appeals from the judgment against him and from the trial court's order denying his motion for new trial.

In 1951 appellant and Aldo were separately engaged in buying grapes on their own account and selling them to the Farmington Winery, hereinafter called "Farmington." Guzmano was employed by Farmington and among his duties was that of deputy public weighmaster under a license issued to one Cellini, who was general manager of Farmington. The grapes sold by appellant and Aldo were processed by Farmington into wine for the account of Italian Swiss Colony, a corporation, hereinafter called "Italian Swiss." Farmington received a tonnage price for this processing and it had contracted to purchase and to process 4,500 tons of grapes. The grapes delivered by appellant and by Aldo were weighed at Farmington's public scales and were paid for on a tonnage basis either by a flat rate per ton or on a basis of sugar content per ton. Italian Swiss paid Farmington, but, because it suspected Farmington's solvency, it adopted the device of making checks direct to those who delivered grapes to Farmington. These checks were generally sent to Farmington for distribution to grape sellers. Payments were made weekly and were computed from the weight certificates issued at Farmington's public scales. Usually Guzmano weighed the grapes, but sometimes other deputy weighmasters, or even

Cellini as a licensed weighmaster, did the weighing. At the end of the crushing season differences arose between Farmington and Italian Swiss, the latter contending that the grapes purchased for it had not yielded the quantity of wine which the weights indicated. Ensuing investigation led to charges that the weighing and the issued weight certificates were fraudulent in that they showed tonnages far in excess of the actual weights, so that Italian Swiss had been paying those who delivered grapes to Farmington for it in excess of the amounts justly due. The indictments followed. At first, indictments were returned against Cellini, as well as the three we have named, but he was not proceeded against and the charges against him were dismissed.

Appellant challenges the sufficiency of the evidence to sustain the convictions as to him; contends that the trial court erred in the admission of certain reputation evidence against him; and claims the proof disclosed only a series of petty thefts.

It is obvious that if there was a general false weighing it could not have occurred except through the wrongful acts of Guzmano. It is equally obvious that if Lima purchased and sold upon the same weight certificates, false weighing by Guzmano could not benefit him directly to any appreciable extent. But the evidence shows that in many instances the grapes purchased by appellant were weighed twice, first on public scales other than Farmington and then on the Farmington scales. Appellant paid for the grapes according to weights shown on these other scales and received pay according to the weights shown by Farmington. While the evidence was far from conclusive, nevertheless it was substantial that Farmington weights exceeded those of the other public scales by nearly 70 tons and that, upon the assumption that the Farmington weights were false, appellant did receive overpayments aggregating over $1,200. On the count of conspiracy the evidence showed in the same way and for the same reasons that Aldo had also received substantial overpayments. The contrasting weight certificates issued by other public scales showed a pattern of overweight by Farmington regardless of what other public scales the same loads had been weighed on. Appellant was shown to have known over a substantial period of time—six weeks to two months—that this pattern of disparity existed. He received copies of the certificates issued by public scales other than Farmington and he received copies of the certificates issued by Farmington.

The same thing could be said of Aldo. The Farmington scales had been checked by the state as to accuracy just before deliveries began. It was shown that all public scales are regularly checked by the state and where found inaccurate are sealed until the defects have been corrected. As to why the double weighings were made it was shown that generally the growers from whom appellant and Aldo purchased requested that their grapes be weighed at the nearest public scales rather than proceeding on to the winery for weighing; and that sometimes the weighings were made before the loads reached Farmington at the direction of appellant. The jury were properly instructed as to the rule of reasonable doubt and as to the rule governing their weighing of circumstantial evidence, this being a case where only circumstantial evidence was introduced by the prosecution. We think the evidence was sufficient both for appellant's conviction on the count of conspiracy and upon that of grand theft. With respect to both appellant and Aldo a definite and long-continued pattern of overweights at Farmington was sufficiently established, which overweighings could not have occurred save by deliberate act of Guzmano. Aldo and appellant, knowing of the disparity between Farmington weights and those of other public scales, bought by the light weights, sold by the heavy weights and thus obtained money from Italian Swiss they knew they were not entitled to unless all the scales were wrong except those of Farmington. They kept silent, taking no steps to inform the growers from whom they purchased that if Farmington was right then these growers were being underpaid, nor to inform Italian Swiss that if the other public scales were right then Farmington was wrong and Italian Swiss was overpaying. We hold the evidence to be sufficient on both counts, since the evidence supports not only an implied finding that a taking occurred, but also an implied finding that this taking was with felonious intent. There was in the evidence denials of guilt by the three alleged conspirators and on the grand theft count by appellant and Guzmano and various explanations of how the overweights might be honestly accounted for were advanced. It was shown that the Farmington scales had a prior history of mechanical breakdowns; that many of the trucks were spot weighed, that is, being too long for the scales, two weighings would be made of the same vehicle, once with the front wheels resting on the scales and once with the rear wheels resting on the scales and that such weighings were

likely to be inaccurate; that some of the loaded trucks remained overnight in rainy weather and the gondolas contained rainwater; that the amount of fuel in the gas tanks of the trucks would vary, thus varying the tare that would be deducted to determine load weight; that in some instances they were split loads, that is, where trucks were weighed at the first public scales they reached there would be added grapes purchased by appellant and loaded between the first weighing and the Farmington weighing. All these matters, however, were gone into quite thoroughly. The jury were fully advised as to their significance and they do no more on the record than to create conflict which has been resolved adversely to the appellant by the jury.

Appellant contends that the trial court erred in permitting certain witnesses on behalf of the People to testify that his reputation for truth, honesty and integrity was bad. Appellant had taken the stand and had denied his guilt and had testified at some length in explanatory fashion seeking to account for such overweights at Farmington as it might be concluded had occurred. In rebuttal, three law enforcement officers took the stand and testified that his reputation for truth, honesty and integrity was bad. They were the chief of police of Stockton, a member of the State Board of Equalization and former police sergeant in Lodi, and the undersheriff of San Joaquin County. Appellant does not contend that testimony as to truth, honesty and integrity cannot be used for impeachment purposes, but he says appellant Lima did not contradict the facts as testified to by witnesses for the People, but only contended against conclusions therefrom and, therefore, impeachment testimony was unnecessary. ■ However, it is well settled that when a defendant in a criminal prosecution takes the stand and denies his guilt he puts in issue his reputation for truth, honesty and integrity, and that by taking the stand he subjects himself to precisely the same rules for testing credibility as any other witness. (See *People* v. *Gordon,* 206 Cal. 29, 34 [273 P. 568]; *People* v. *Larrios,* 220 Cal. 236, 247 [30 P.2d 404].)

■ Appellant further contends that the reputation evidence received had not been properly foundationed in that it ought to have been shown that the witnesses knew his reputation at his place of residence. Appellant cites *Khan* v. *Zemansky,* 59 Cal.App. 324, 329 [210 P. 529], where the rule was so stated. Appellant testified that he, generally speaking,

resided where his business called him, but he also said that he had resided for some time in Stockton, and the witnesses testified that they knew his reputation in that community. We think the contention of error cannot be sustained.

█ Finally, appellant contends that the record discloses at most a series of petty thefts and that, therefore, the evidence does not support a conviction of grand theft. The point is not tenable. Essentially the argument is that each false weight tag and the overcharge for which it stood could support only a finding of petty theft of the amount of that overcharge. But as said in *People* v. *Howes*, 99 Cal.App.2d 808, 818 [222 P.2d 969]:

". . . The general test as to whether there are separate offenses or one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. The particular facts and circumstances of each case determine this question. If there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense, . . . " (See also *People* v. *Sing*, 42 Cal.App. 385 [183 P. 865], and *People* v. *Fleming*, 220 Cal. 601 [32 P.2d 593].)

The judgment and the order denying a new trial are affirmed.

Peek, J., and Schottky, J., concurred.