[Crim. No. 6744. In Bank. Mar. 9, 1961.]

THE PEOPLE, Appellant, v. HELEN BAILEY, Respondent.

Stanley Mosk, Attorney General, Preble Stolz, Deputy Attorney General, Louis P. Bergna, District Attorney, and William P. Hoffman, Deputy District Attorney, for Appellant.

Peter Anello for Respondent.

GIBSON, C. J.—Defendant was found guilty of grand theft in unlawfully taking $3,064 of the public moneys of Santa Clara County between July 1, 1956, and December 11, 1957. She made a motion for a new trial upon the grounds that "the facts in this particular case do not in fact constitute a crime" and that the court erred in instructing the jury. The judge granted the motion, and the People have appealed from the order. (Pen. Code, § 1238, subd. 3.)

Defendant did not testify, and she does not claim there is any material conflict in the evidence. It appears that since 1954 she had been receiving welfare payments for the support of herself and two minor children. At the time of annual renewal, defendant signed a statement in which she promised to advise the county welfare department of any change in her marital status or living arrangements. In June 1956 she wrote to the department that she was renting a room in her home to Edward Connery for $15 a month. A county social worker visited her in March 1957 after receiving information that defendant and the man in her home were living as husband and wife. The social worker told defendant that if Connery remained in the home, the department would assume that a "stepfather case" was involved, and Connery's income

would be considered in determining whether she remained eligible for assistance. Defendant said that she "understood the Agency's position," that Connery merely rented a room in the home and was not there in the "position of a stepfather," and that she was not living with him as his wife. A few days later defendant informed the welfare department that Connery would move soon, and on April 3 she stated he had left. The uncontroverted evidence shows that Connery continued to reside in the home during the entire period in question.

The evidence also shows without contradiction that defendant and Connery deported themselves as husband and wife while he resided in the home. Prior to June 1956 they leased a house in their joint names, and defendant signed the lease as "Helen F. Connery." She was addressed by her daughter-in-law as "Mrs. Connery," and during the period from June 1956 to December 1957 she had an unlisted telephone number under the name of "Helen Connery." In furnishing information for group insurance purposes, Connery identified defendant as "Helen Frances Connery" and named her two minor children as his stepchildren. In May 1957 defendant and Connery bought a freezer for $488.80, and she signed the sales contract as "Mrs. E. J. Connery." In August 1957 they purchased real property in the names of "E. J. Connery and Ellen M. Connery, his wife, as joint tenants," and in September they bought a car upon which the contract price after down payment was $4,142.88, and defendant signed as "Helen F. Connery." In a statement made to the district attorney in December 1957 defendant admitted she had been living with Connery as his wife since June 1954.

Connery testified that defendant was his tenant but also stated that their relationship was closer than that of a landlord and tenant. His gross earnings between June 1956 and December 1957 were in excess of $11,000.

[■■] The trial judge, in granting a new trial, concluded that it was error to give the following instructions:

"You are instructed that under the regulations adopted by the State Department of Social Welfare, which are in evidence for your consideration, where a man and a mother of a child receiving aid are deporting themselves as man and wife, there is a presumption that the man and the mother of the aided child are married and that the man is the stepfather of the aided child. This presumption and evidence of conduct are sufficient to establish the existence of marriage and the

stepfather relationship for purposes of aid to needy children, even though the parties in applying for aid deny that they are married. A man and woman deport themselves as man and wife if they live together in an established family relationship over a reasonable period of time, have represented themselves to the community as man and wife, such as by maintaining joint bank accounts or credit accounts, or have made statements to friends, neighbors, etc., that they are man and wife. The man or mother, according to the same regulations, may refute the presumption of marriage by sufficient evidence."[1]

"You are instructed that, according to the regulations of the Social Welfare Department, which are in evidence for your consideration, at any time while the man and the mother of the aided child deport themselves as man and wife prior to the time that they have refuted the presumption of marriage by sufficient evidence shown to the Department of Social Welfare, the Department has a right to treat the man as if he were the stepfather of the aided child and to compute eligibility for aid by considering the income of the man who has assumed the role of spouse to the mother of the aided child."

Section 1508 of the Welfare and Institutions Code provides that, where aid is requested for a needy child living with his mother and stepfather, the income of the stepfather is to be considered in computing the amount of aid to be granted and that the stepfather is bound to support his wife's needy children if able to do so.[2] Under the regulation covered by the court's instructions, where the presumption of marriage is

---

[1]This instruction is substantially in the language of a regulation which was in effect at the start of the period in question. This regulation was superseded, on August 1, 1956, by one which provided in part: "Where a man living in the household is assuming the role of spouse to the mother of eligible children, the income for the eligible children shall be determined by the method prescribed for stepfather cases. . . ." This, in turn, was superseded by another regulation which reads in part: "A man living in the home assuming the role of spouse to the mother of the needy child has the same responsibility as that of a stepfather for the mother and the needy children." Defendant does not complain of the failure to inform the jury of the change in regulations, and it appears that the earlier regulation was more favorable to her than the later ones and that the fact of changes was not material.

[2]Section 1508 of the Welfare and Institutions Code provides in part: "Where a needy child as defined in this chapter lives with his mother and stepfather, the amount of the grant made pursuant to Section 1511 of this code shall be computed after consideration is given to the income of the stepfather. The county granting aid shall determine if the stepfather is able to support the child either wholly or in part. Said determination shall be based upon a standard which takes into account the

not rebutted, the department may proceed as it would under section 1508 and compute the need upon the same basis as if there was a legitimate stepfather relationship. The presumption is the same as that established by subdivision 30 of section 1963 of the Code of Civil Procedure, which provides that there is a disputable presumption that "a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage."

The regulation declares a rebuttable presumption for use in determining the amount of relief to be granted under the aid to needy children program; it does not purport to create or alter legal relationships or to state what is necessary in order to have a valid marriage. There was no error in giving the instructions in question.

 Although the uncontroverted evidence shows that defendant was guilty of theft by false pretenses, the question is presented whether she was guilty of grand theft or of a series of petty thefts since it appears that she obtained a number of payments, each less than $200 but aggregating more than that sum.[3] The court instructed the jury that if several acts of taking are done pursuant to an initial design to obtain from the owner property having a value exceeding $200, and if the value of the property so taken does exceed $200, there is one crime of grand theft, but that if there is no such initial design, the taking of any property having a value not exceeding $200 is petty theft. (See Cal. Jury Instns. Crim., pp. 192-193.)

 Several recent cases involving theft by false pretenses have held that where as part of a single plan a defendant makes false representations and receives various sums from the victim the receipts may be cumulated to constitute but one offense of grand theft. (*People* v. *Robertson,* 167 Cal.

stepfather's income and expenses under regulations set forth by the State Board of Social Welfare.

Notwithstanding the provisions of Section 209 of the Civil Code a stepfather is bound to support, if able to do so, his wife's children if without support from such stepfather they would be needy children eligible for aid under this chapter. However, such liability for support shall not exceed the wife's community property interest in his income. . . ."

[3]Penal Code section 487 provides in part: "Grand theft is theft committed in any of the following cases: 1. When the money, labor or real or personal property taken is of a value exceeding two hundred dollars ($200); . . . provided, further, that where the money, labor, real or personal property is taken by a servant, agent or employee from his principal or employer and aggregates two hundred dollars ($200) or more in any 12 consecutive month period, then the same shall constitute grand theft."

App.2d 571, 576-577 [334 P.2d 938] [fraudulent charge accounts] ; *Dawson* v. *Superior Court,* 138 Cal.App.2d 685, 686 et seq. [292 P.2d 574] [aid to needy children checks] ; *People* v. *Lima,* 127 Cal.App.2d 29, 34 [273 P.2d 268] [overcharges based on false weight tags].) The test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents. The same rule has been followed in larceny and embezzlement cases, and it has been held that where a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft. (*People* v. *Fleming,* 220 Cal. 601, 610-611 [32 P.2d 593] [embezzlement] ; *People* v. *Howes,* 99 Cal.App.2d 808, 818-821 [222 P.2d 969] [larceny] ; *People* v. *Yachimowicz,* 57 Cal.App.2d 375, 381 [134 P.2d 271] [larceny] ; *People* v. *Dillon,* 1 Cal.App.2d 224, 228-229 [36 P.2d 416] [larceny] ; cf. *People* v. *Bratton,* 125 Cal.App. 337, 342-344 [14 P.2d 125] [embezzlement] ; *People* v. *Sing,* 42 Cal.App. 385, 395-396 [183 P. 865] [larceny] ; see *People* v. *Ashley,* 42 Cal.2d 246, 279 [267 P.2d 271] [footnote to concurring and dissenting opinion by Schauer, J.] ; see also cases collected in 136 A.L.R. 948.)

▇▇▇ Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. (*People* v. *Stanford,* 16 Cal.2d 247, 250-251 [105 P.2d 969].) In the following cases it was held that each receipt of property obtained by false pretenses constituted a separate offense for which the defendant could be separately charged and convicted. (*People* v. *Ashley,* 42 Cal.2d 246, 273 [267 P.2d 271] ; *People* v. *Rabe,* 202 Cal. 409, 413-414 [261 P. 303] ; *People* v. *Barber,* 166 Cal.App.2d 735, 741-742 [333 P.2d 777] ; *People* v. *Caldwell,* 55 Cal.App.2d 238, 250-251 [130 P.2d 495] ; *People* v. *Ellison,* 26 Cal.App.2d 496, 498 [79 P.2d 732].) Although none of these decisions discussed the rule set forth above, it does not appear that the convictions would have been affirmed had the evidence established that there was only one intention, one general impulse, and one plan.

*People* v. *Scott,* 112 Cal.App.2d 350, 351 [246 P.2d 122] ;

*People* v. *Serna,* 43 Cal.App.2d 106, 107 [110 P.2d 492] et seq.; and *People* v. *Miles,* 37 Cal.App.2d 373, 378-379 [99 P.2d 551], are disapproved insofar as they are inconsistent with the views expressed herein.

 In the present case the material facts are not in dispute, and the jury was properly instructed.

The order granting a new trial is reversed.

Traynor, J., Schauer, J., McComb, J., White, J., and Dooling, J., concurred.

PETERS, J.—I concur in the order reversing the granting of a new trial.

This case differs materially from *People* v. *Shirley, post* p. 521 [11 Cal.Rptr. 537, 360 P.2d 33], also decided this day. In the instant case, as the main opinion correctly points out, the challenged instruction and the regulation upon which it was based merely told the jury that a disputable presumption arises that a man and woman are married when they publicly deport themselves as husband and wife. This is in precise accord with the rebuttable presumption created by section 1963, subdivision 30, of the Code of Civil Procedure.

The later regulations which were involved in the Shirley case, *supra,* and which are correctly set forth in footnote 1 of the main decision in this case, are, in my opinion, illegal and void for the reasons set forth in my dissent in the Shirley case, *supra.*

I concur in the order of reversal.