[No. A023348. First Dist., Div. One. Jan. 23, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JONATHAN LAURY BROOKS, Defendant and Appellant.

**COUNSEL**

Edward Dang for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Charles J. James, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NEWSOM, J.**—The instant appeal arises from a judgment of conviction on 13 counts of felony grand theft and 1 count of misdemeanor theft.

During 1979 and 1980, appellant, doing business as the Russ Allen Auction Service, auctioned farm and heavy equipment throughout northern and central California. On November 14, 1980, appellant accepted several items on a consignment basis for an auction held on that date in the City of Napa. Fourteen consignors of equipment sold at this auction never received the proceeds from the sale of their machinery.

Appellant was thereupon charged by information with 14 counts of violating Penal Code section 487 (grand theft). At trial, each of the 14 victims testified that they had executed a consignment agreement with appellant's company, that pursuant to this agreement each had delivered equipment to

appellant for auction, that the equipment had been sold, that no proceeds had been received from the sale, and that the value of the equipment in each instance was in excess of $200.[1]

The jury returned verdicts finding appellant guilty on all counts. The court thereupon sentenced appellant to state prison for the middle term (two years) on one count, and to consecutive terms of one-third the middle term (eight months) on each of three other counts. As to the remaining felony counts, appellant was sentenced to one-third the middle term on each—to run consecutively—which sentences, however, were stayed. Appellant was also sentenced to six months in county jail on the misdemeanor count (IV, see fn. 1), and this too was stayed. Finally, appellant was ordered to make restitution to the extent possible pursuant to section 28, subdivision (b), article I of the California Constitution.

■ Appellant's initial contention is that the probative value of various of his prior uncharged wrongful acts was outweighed by their prejudicial impact. This evidence was that in four auctions in the preceding three months, appellant had paid only one consignor and that with funds from the November 14, 1980, auction. The trial court admitted this evidence as relevant to show motive, intent, plan, absence of mistake or accident.

■ The admissibility of uncharged conduct depends upon three principal factors: 1) materiality of the fact sought to be proved or disproved; 2) tendency of the uncharged crime to prove or disprove the material fact; and 3) existence of any rule or policy requiring the exclusion of relevant evidence. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883].) ■ Here, it was the prosecution's theory that such prior acts, coupled with the instant defalcations, revealed a conscious scheme of "kiting" auction proceeds. Under these circumstances, the probative value of the evidence in question is not, as appellant avers, "insignificant if not nil," but rather, as the trial court correctly perceived, extremely relevant on the material issues of motive, intent, common plan, etc. The evidence was properly admitted.

■ We next address the central issue of this appeal—whether the evidence supports appellant's having been charged, convicted, and sentenced on 14 separate counts rather than on one single count.

The issue of whether a course of conduct gives rise to single or multiple offenses arises in several distinct contexts and for distinct reasons. In the

---

[1]As to one of the counts (IV) it was later stipulated that there was a failure of proof as to value of the equipment and this count was reduced to a misdemeanor.

instant action, the contexts in which this determination becomes necessary are principally (1) the form of the information, and (2) the prohibition against multiple conviction and punishment.

█ Turning to the first of these contexts—the form of the information— Penal Code section 954 provides, inter alia, that "An accusatory pleading may charge two or more different offenses connected together in their commission . . . under separate counts." This statute "permits the joinder of different offenses . . . if there is a common element of substantial importance in their commission, for the joinder prevents repetition of evidence and saves time and expense to the state as well as to the defendant." *(People v. Scott* (1944) 24 Cal.2d 774, 778-779 [151 P.2d 517].)

Even where joinder of offenses theoretically is proper, it is within the discretion of the trial court to order severance upon a showing of prejudice to the defendant. *(People v. Kemp* (1961) 55 Cal.2d 458, 474-477 [11 Cal.Rptr. 361, 359 P.2d 913].) It thus appears that the policies underlying the determination—for joinder purposes—of whether a defendant's acts constitute a single or multiple offenses, center upon possible prejudice to the defendant and the convenience of the court.[2]

█ The joinder issue is of little impact on the present appeal, however; appellant, having failed below to avail himself of the proper procedure for challenging the information via demurrer,[3] may not complain of the propriety of the accusatory pleading on appeal. "Section 1004, subdivision 3, of the Penal Code, provides that a defendant may demur to the accusatory pleading before entry of plea when it appears 'That more than one offense is charged, except as provided in Section 954.' Section 1012 of the Penal Code provides that 'When any of the objections mentioned in Section 1004 appears on the face of the accusatory pleading, it can be taken only by

---

[2]See, e.g., *People v. Frankfort* (1952) 114 Cal.App.2d 680 [251 P.2d 401], where defendants were prosecuted for a fraudulent real estate subdivision project in which many persons were induced to invest money. The information charged 68 counts of grand theft and 1 count of conspiracy to commit grand theft. At the end of a long opinion, the court opined: "Our examination of this record impels us to observe that neither the results in this case nor the administration of justice generally justifies filing so many counts in this class of cases. . . . Because so many counts were involved the expense of this case has been quite excessive both to the People and the defendants, the administration of justice has been unreasonably delayed, and the criminal courts unnecessarily congested thus interfering with the normal disposition of other matters." (114 Cal.App.2d at p. 707.)

[3]Appellant assigns as ineffective assistance of trial counsel the failure to bring a motion under Penal Code section 995 to set aside the information. Without delving into the merits of this argument, it is noted that such a motion would probably have been unavailing: The section 995 motion attacks procedural steps preceding the information or the lack of probable cause for commitment. In order to attack the *pleading itself,* however, the demurrer is the appropriate vehicle.

demurrer, and failure so to take it shall be deemed a waiver thereof' except in certain situations not here applicable. Under this section it is well settled that in the absence of demurrer or proper objection, the defendant must be deemed to have waived the point as the section expressly provides. (*People* v. *Stone,* 199 Cal. 610, 624 [250 P. 659]; *People* v. *Rankin,* 169 Cal.App.2d 150, 158 [337 P.2d 182].) This is so even where there is a clear misjoinder. (*People* v. *Cummings,* 173 Cal.App.2d 721, 730 [343 P.2d 944].)" (*People* v. *Kemp, supra,* 55 Cal.2d at p. 474.)

We turn to the second context in which the single/multiple offense distinction is raised—the prohibition against multiple conviction and punishment. ▋ If otherwise separate crimes are committed with a single ultimate object, only one punishment is possible under Penal Code section 654. (*People* v. *Tideman* (1962) 57 Cal.2d 574 [21 Cal.Rptr. 207, 370 P.2d 1007].) The policy underlying the single/multiple offense determination in this context is a concern that no extreme or disproportionately severe sentence be imposed.

In theft prosecutions, the problem of whether successive acts constitute separate crimes or a single crime has been an especially thorny one, with early cases coming to different results and stressing the distinction among larceny, embezzlement, and taking by false pretenses. (See generally, 1 Witkin, Cal. Crimes (1963) § 375, pp. 348-349.) ▋ In *People* v. *Bailey* (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39], our high court undertook to resolve the conflict, explaining as follows: "Several recent cases involving theft by false pretenses have held that where as part of a single plan a defendant makes false representations and receives various sums from the victim the receipts may be cumulated to constitute but one offense of grand theft. [Citations.] The test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents. The same rule has been followed in larceny and embezzlement cases, and it has been held that where a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft. [Citations.] [¶] Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. [Citation.]" (*Id.,* at pp. 518-519.)

The following test has ultimately been established for all three types of theft: "If the defendant has no general overall plan or intent, each offense

is regarded as distinct; if he has a general intent or overall plan, there is only one offense, and the values will be aggregated to make a single crime of grand theft." (Witkin, Cal. Crimes, § 374, p. 348.)

Applying this test to the case at bench, we find that the instant thefts from a single fund arising from a single auction, when seen in the light of the prosecution's own theory of a common scheme of "kiting" auction proceeds, were the product of a general intent or overall plan, with but a single ultimate object and thus punishable as a single offense under Penal Code section 654.

The People, however, assert that the *Bailey* doctrine was only intended to apply to the situation where, pursuant to a common plan, there had been an accumulation of receipts from a series of misdemeanor petty thefts: under such circumstances, the perpetrator may be prosecuted for felony grand theft. The People urge us to limit *Bailey* to such a situation rather than to extend it to include cumulation of grand thefts. This argument draws strength from historical considerations: many of the pre-*Bailey* cases involved welfare fraud cases and the cumulation of large sums in small increments. Still, in our view, as expressly found in *People* v. *Sullivan* (1978) 80 Cal.App.3d 16 [145 Cal.Rptr. 313], the language of *Bailey* does not invite so narrow a construction. (See also *People* v. *Gardner* (1979) 90 Cal.App.3d 42, 46-49 [153 Cal.Rptr. 160].)

Nor is our conclusion altered by the fact of there being multiple victims. Where offenses arising out of the same transaction are not crimes of violence, but crimes against the property interests of several persons, only single punishment is possible. (*People* v. *Bauer* (1969) 1 Cal.3d 368, 378 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) "If the rule were otherwise a burglar who entered an empty house and took numerous articles belonging to one person could be punished for only one offense, but if some of the articles belonged to each of the other members of the family, the burglar could be given consecutive sentences for as many offenses as there are members of the family. The situation would be even more anomalous where stolen property was owned jointly or by a partnership." (*Id.*, at p. 378.)

The theoretical basis for this doctrine is that the legal quality of the act—the felonious taking of property—is not affected by the fact that the property belongs to different people. Thus, "[a]lthough it is necessary to set out in the indictment the ownership of the property in order that the prisoner may be informed as to the precise nature of the offense charged against him, and further to enable him to plead a former conviction or acquittal in bar of a subsequent prosecution for the same offense, . . . the offense is an offense

against the public, and the prosecution is conducted not in the name of the owner of the property, nor in his behalf, but in the name of the state, the primary object being to protect the public against such offenses by the punishment of the offender." (See Annot., 37 A.L.R.3d 1407, 1413.)

We conclude that appellant's conviction and sentencing on fourteen separate counts were error. While our conclusion renders unnecessary any discussion of various other sentencing errors alleged by appellant, for the guidance of the trial court upon remand, we opine that our high court's decision in *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 669, 667 P.2d 149], that Proposition 8 applies only to prosecutions for crimes committed on or after June 1982, precludes an order mandating restitution in the instant case.

The judgment is reversed on all but count XIV—the principal term—and the cause remanded with directions that counts I through XIII be stricken and dismissed, and the appellant rearraigned for sentencing. As so modified the judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.