[No. D008544. Fourth Dist., Div. One. Nov. 17, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
GRANT DONALD CHURCH, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1 and 976(b) this opinion is certified for publication with the exception of parts III and IV.

1152

COUNSEL

Jeffrey J. Stuetz, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Janelle B. Davis and John T. Swan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HUFFMAN, J.—Grant Donald Church was convicted by jury of four counts of burglary (Pen. Code,[2] § 459), one count of grand theft (§ 487, subd. 1) and three counts of petty theft (§ 484). As to each count of petty theft, the jury found true allegations that Church had been previously convicted of and imprisoned for burglary (§ 666).[3]

Church was sentenced to a total term of three years in prison, with a restitution fine of $500 imposed but stayed by the court. He timely appealed.

FACTUAL BACKGROUND

As of June 19, 1987, Church had been visiting Traci Savage (Traci) for several days at her parents' home in Fallbrook. Church had visited the Savage home periodically since Traci had given birth to their child. Traci went to sleep on the evening of the 19th and woke up about 1 a.m. the next morning and discovered Church was missing from the house. She also discovered her father's car was no longer in the driveway where it had been parked earlier in the evening.

---

[2] All statutory references are to the Penal Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

[3] During trial the information was amended to change the prior conviction alleged under section 666 from petty theft to burglary.

Traci set out to look for Church and made a phone call to seek help from a neighbor and friend of her sister's, Mike Mosely. Mosely refused to help.

Traci awakened her father, Tracy Savage (Savage), and told him Church and Savage's cars were both gone from the house. When Church finally returned to the house around 4 a.m., Savage confronted him. Church told Savage he had been to the 7-Eleven store to buy cigarettes and had car trouble which delayed him for hours. Church returned the car keys which were on the same ring as Savage's keys to his physical therapy office. Savage told Church they would discuss the matter further in the morning and went back to bed.

Around 5:30 that morning, Church and Traci went across the street to Mike Mosely's house where Church asked Mosely for a ride to the bus station in Oceanside. Church gave Mosely $50 for the ride and told him not to tell anyone where he got the money. At the same time, Church gave Traci $250 in cash. Church did not tell Traci where he was going until he called her later that same day from El Centro.

Later the same day, security guards from Savage's office building called his home to tell him the building had been burglarized.[4]

Savage's office was one of several medical offices located in a one-story rectangular structure. All the offices had outside doors with individual keys which only unlocked their respective doors. The offices also interconnected through locked interior doors. Entry could be gained from Savage's office to the other offices only by breaking through the locked interconnecting doors.

Dr. Candace Morgan, a cardiologist, had an office adjacent to Savage's office. On Saturday morning, June 20, 1987, she went to her office where she noticed the window was unlocked and the lock was gone. It was later found in a damaged condition under some magazines. Access to her office could be made through the unlocked window. Dr. Morgan noticed footprints on the countertop. She discovered the cash box containing $23 and a roll of stamps were missing.

On June 20, 1987, all of the other office tenants were notified of the burglaries. When Carol Baker, the office manager of the Fallbrook Family Practice Medical Group, arrived, she saw open drawers, a broken window, cabinet doors which had been broken into, and a locked cabinet which had been forced open. Five of the six file cabinet drawers in the office had been

---

[4]It was later determined there was no evidence Savage's office had been disturbed or ransacked, although four other offices in the building had been burglarized, as will be described.

broken open. The only cash in the office was located in the unopened drawer. Apparently the only item missing was a pair of surgical gloves.

When Marilyn Gray, the business manager for Orthopedic Associates, arrived, she found the door to her private office standing open, although she had locked the door when she left work the previous evening. Pry marks were visible on the door. The desk drawers were open, including locked drawers which had been pried open, and papers were thrown about the room. Cash in the amount of $1,005 was missing. Of the missing funds, $800 was in the form of $100 bills.

The Hearing Aid Center at the office building shared the same waiting room with Savage's office. When Kathleen Mondi, the center's receptionist, left her office on June 19, 1987, it was locked. When she arrived at work on Monday, she discovered $67 in cash had been removed from the drawer in her locked office. In order to gain access to her office from Savage's office, one would have to enter through a locked door or the reception window.

After Savage learned of the break-ins, he became aware his daughter Traci was talking to Church on the phone. Savage got on the phone and asked Church if he had committed the burglary using Savage's office keys. Church, who sounded intoxicated, admitted the burglaries and said he would try to find a way to repay the doctors. Savage advised Church to turn himself in and to get help for his drug problem.

Savage reported his conversation with Church to San Diego Sheriff's Deputy Love on June 23, 1987. Deputy Love went to the Savage residence the next day and spoke to Traci. He advised her Church was a suspect in the burglaries. Traci called Deputy Love at the station later in the day and asked questions about the investigation and any possible consequence for Church's probation. Traci told Deputy Love about her discovery that Church was missing from the house and her efforts to find him. She said Church told her he had used her father's office keys to enter the building but had not taken anything.

Church testified in his defense at trial. He stated that on June 20, 1987, at about 1 or 1:30 a.m., he took the Savages' car to drive to the 7-Eleven store which was about three miles away. He said he was always able to use the car without seeking permission. When he left the store, he was unable to start the car. He walked to a friend's house to get jumper cables. He eventually got the car started, dropped off the friend and returned to Mr. Savage's house about 4 a.m. When he pulled into the driveway, Savage confronted him and asked where he had been. He gave Savage the key ring

and went into the house. He decided to leave early that morning because he and Traci were having problems and Savage was upset with him.

Church admitted paying Mosley $50 for the ride to the bus, but denied asking him not to tell anyone about the money. He also denied he had admitted the burglary to Savage on the telephone.

The prosecutor impeached Church's testimony with his prior burglary conviction and told the jury in her opening statement that his prior conviction involved a theft offense against a commercial building.

For the defense, Savage's wife testified Church was permitted to use the family car during his visits without asking permission. She also said the car was sometimes difficult to start. She testified there was a lot of animosity between Church and her husband and that her husband would do anything to get Church out of his daughter's life.

The prosecutor presented rebuttal evidence from Sheriff's Deputy Love. He testified he spoke with Church on September 21, 1987, at the Vista Detention Facility. Church denied committing the burglaries, but talked about making a deal. He offered to give information regarding drug sales in return for his release.

Church then volunteered a different story to Deputy Love. He said he had been at a pond with a woman the night of June 20, 1987. He did not want Traci to find out about the other woman and refused to disclose her name. He also denied going to a motel in El Centro and denied talking to Savage on the telephone. Church then recanted that story and said he had gone to a motel in El Centro and that he had indeed talked to Savage.

## DISCUSSION

### Introduction

Generally arguing he received ineffective assistance of trial counsel, Church urges several theories on appeal which differ from those presented to the trial court. Although his defense at trial was directed toward the issue of mistaken identity, on appeal he chiefly argues the facts proved at trial show only one burglary and one taking of property occurred, amounting to a single charge of grand theft. In other words, he contends the entries into the various offices and the taking of property therein were accomplished with a single intent or plan and should not have been charged or tried as separate offenses.

Following this line of reasoning, Church presents a trio of related arguments: (1) he was denied effective assistance of counsel when his attorney failed to invoke the doctrine in *People* v. *Bailey* (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39], to challenge his prosecution on four theft counts instead of a single grand theft count; (2) his trial counsel ineffectively made only a token objection to bringing his prior conviction before the jury in connection with the three section 666 allegations, in light of conflicts in the law in this area; and (3) the prosecution failed to prove four separate and distinct burglaries, thus requiring three of the burglary convictions to be reversed. He also contends the allegations under section 666 should have been dismissed for insufficiency of the evidence that he ever served time in a penal institution. We discuss these contentions separately.

I

*The Petty Theft Counts*

■ Church claims he was denied effective assistance of counsel at trial due to the failure of his attorney to seek dismissal of the petty theft charges or to ask for special instructions pursuant to *People* v. *Bailey, supra,* 55 Cal.2d 514. He relies on language in that case as follows: "Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." (*Id*. at p. 519.)

To support his claim the representation he received prejudiced him, he argues that due to defense counsel's failure to demur to or seek dismissal of the petty theft counts, the jury became aware of his prior burglary conviction in the prosecutor's case in chief because of the section 666 allegations accompanying the petty theft counts. He seeks reversal of all convictions on the petty theft and burglary counts based on the claimant error or, in the alternative, modification of the judgment to a single conviction of grand theft and burglary.

■ At the outset, we note the burden of proving a claim of inadequate assistance of counsel is on Church. The test for determining whether an attorney has failed to provide adequate representation is well established in *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], and *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]. In *Pope,* the California Supreme Court set forth a two-step test for measuring the adequacy of counsel. First, the defendant must demonstrate counsel failed to act in a manner to be expected of reasonably

competent attorneys acting as diligent advocates. (*People* v. *Pope, supra,* at p. 425.) In addition, the defendant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. (*Ibid.*)

*Fosselman* refined the *Pope* test by providing in those cases where counsel's actions have not led to the withdrawal of a meritorious defense, "a defendant may prove such ineffectiveness if he establishes that his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. [Citations.]" (*People* v. *Fosselman, supra,* 33 Cal.3d at p. 584.)

In *People* v. *Ledesma* (1987) 43 Cal.3d 171, 216-218 [233 Cal.Rptr. 404, 729 P.2d 839], the Supreme Court restated the test for a successful claim of inadequacy of trial counsel: the defendant must show both that counsel's performance was deficient or fell below the prevailing professional norms, and counsel's performance prejudiced him.

 Pursuing his position that since there was only one building containing all the offices, there was but a single criminal intent, Church points to the rule stated in *People* v. *Bailey, supra,* 55 Cal.2d 514, in his attempt to show prejudice from trial counsel's performance. The Supreme Court in *Bailey* dealt with a defendant charged with welfare fraud. The issue before the court was whether a series of payments, each under $200 and obtained from a single victim (the government) as a result of a single and continuous scheme, could be charged in a single grand theft count. The court said in part: "The test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents." (*Id.* at p. 519.)

Both *Bailey* and another case relied on by Church, *People* v. *Slocum* (1975) 52 Cal.App.3d 867 [125 Cal.Rptr. 442], involved a set of circumstances entirely different from those at issue in this case. *Slocum* involved a person convicted of Medi-Cal fraud arising again from a single scheme to obtain money from a single victim over a prolonged period of time. Neither *Bailey* nor *Slocum* lends any support to Church. If anything, these cases illustrate the validity of separate charging of thefts from four separate offices, the entry to each requiring an individual act of force.

Similarly, *People* v. *Brooks* (1985) 166 Cal.App.3d 24 [210 Cal.Rptr. 90], held one act by an auctioneer of taking funds which were due consignors from the proceeds of a sale amounted to a single theft. The court recognized the single intent or plan standard of *Bailey*. The court used an example of a

single entry into a family home and the taking of personal property of the various family members, and observed such a taking would be one theft. We agree with that example and do not quarrel with the authorities cited by Church. Rather, we find them inapposite. Church's arguments are at odds with the facts.

In this case, the information filed plainly charges four burglaries, one grand theft and three petty thefts with prior theft convictions (§ 666). The prosecution's case, unchallenged in that regard at trial, was premised on the theory the entries into and thefts from the four separately leased and locked offices amounted to crimes against four separate interests and therefore represented separate offenses. The evidence supports that theory. Four separate businesses were forcibly entered and ransacked. Although the crimes were committed in a single episode, they represented separate intrusions into the privacy of separate victims and were validly chargeable as distinct offenses. Accordingly, we conclude Church has failed to meet his burden of proving his trial counsel was inadequate for choosing to focus the defense upon the issue of identity, rather than pursuing a *Bailey* theory at trial.

## II

### *The Prior Conviction*

■ Church was charged with three counts of petty theft after a prior theft-related conviction (§§ 484/666).[5] During the trial the information was amended to allege a burglary conviction as the prior conviction in each of those charges. The prosecutor offered to prove the prior burglary during the presentation of her case-in-chief. Trial counsel objected as follows: "Just for matter of record, I understand what the case law is, but I would ask to, just for the record, make an objection to the introduction of the prior, at least mention the prior at this time, based on the fact we've got a concern by the court—obviously this is an element of the offense. Also got a concern it would prejudice my client."

The trial court responded, "All right, overruled, and the court will find that the priors are elements of the offense and therefore are provable by the People in front of the jury."

Based on this exchange, Church urges an extremely novel theory of inadequate assistance of counsel. In an exposition covering 18 pages of his

---

[5]Section 666 provides in relevant part: "Every person who, having been convicted of petit theft, grand theft, . . . , burglary . . . having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petit theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison."

brief, appellate counsel traces the law relative to the use of prior convictions under section 666 from 1887 to the present, urging: "Reasonably competent defense counsel, acting as a diligent advocate, could have shown the trial court that, at the very least, a substantial conflict in the law existed on this important issue."

To his credit, appellate counsel does acknowledge this court issued an opinion three months prior to the trial which squarely rejects the position now taken by Church on appeal. (*People* v. *Johnson* (1988) 199 Cal.App.3d 868 [245 Cal.Rptr. 242].) In essence, then, it is urged trial counsel was incompetent for not engaging in appellate counsel's extensive and scholarly review of the law in the hope of persuading the trial court to reject a decision of this court. Interestingly, Church does not directly ask us to overrule *Johnson,* although he does criticize it. Rather, he urges reversal for trial counsel's failure to advance this detailed argument to the trial court.

In light of the manner in which Church has approached the issue of the admission of the prior in this case, it is unnecessary for us to canvass the entire history of section 666 and the question of whether the prior conviction is part of the crime or an enhancement which could be subject to a bifurcated proceeding under *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191]. It is appropriate, however, to again examine our opinion in *People* v. *Johnson, supra,* 199 Cal.App.3d 868, to determine whether our position as to the admissibility of the prior conviction in cases involving section 666 is correct.

In *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826] (questioned in *People* v. *Valentine* (1986) 42 Cal.3d 170 [228 Cal.Rptr. 25, 720 P.2d 913]), the Supreme Court held that where a defendant offered to stipulate to the truth of a prior conviction which was an element of the charged crime, the court could not allow the prosecutor to present the prior conviction to the jury.[6] Thereafter, the California Constitution was amended to add article I, section 28, subdivision (f) (part of what is commonly known as Proposition 8). The second sentence of the subdivision provides: "When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court." The language of section 28, subdivision (f) was directed at *People* v. *Hall, supra,* 28 Cal.3d 143, 148. (*People* v. *Valentine, supra,* 42 Cal.3d 170, 176; *People* v. *Bennett* (1987) 188 Cal.App.3d 911, 914 [233 Cal.Rptr. 729].)

In *People* v. *Valentine, supra,* 42 Cal.3d 170, the Supreme Court held section 28, subdivision (f) overruled *Hall* to the extent that authority

---

[6] Church did not offer to stipulate to the truth of the alleged burglary prior conviction in this case.

precluded disclosure of stipulated ex-felon status to a jury trying a charge of which such status is an element (e.g., § 12021). However, the Supreme Court expressly declined to decide the effect of Proposition 8 on cases tried under section 666, instead pointing to two conflicting Court of Appeal decisions. (*People* v. *Valentine, supra,* 42 Cal.3d at p. 181, fn. 6.)

No subsequent Supreme Court decision has applied article I, section 28, subdivision (f) to section 666 cases since *Hall,* although the Courts of Appeal, as noted by Church and *Valentine,* have passed on that issue.

Before the trial in this case and before our decision in *People* v. *Johnson, supra,* 199 Cal.App.3d 868, the Court of Appeal in *People* v. *Bennett, supra,* 188 Cal.App.3d 911, 914, reviewed the decisions of various appellate courts regarding section 666 since subdivision (f) was added to the Constitution. In *Bennett* the court concluded the prior conviction referred to in section 666 was an element of the felony offense described in that section and thus came within the command of subdivision (f); it also found inapplicable to section 666 cases certain language in *People* v. *Valentine, supra,* 42 Cal.3d 170, 181-182, holding the nature of the prior felony conviction is irrelevant to a charge of ex-felon status (§ 12021) and should not be admitted. (See also *People* v. *Coffman* (1986) 184 Cal.App.3d 1539, 1542-1543 [229 Cal.Rptr. 441].) The court in *Bennett* reached that conclusion because it found the theft-related nature of a prior felony conviction was relevant to charges brought under section 666. (*People* v. *Bennett, supra,* 188 Cal.App.3d at p. 915.) Although our opinion in *People* v. *Johnson, supra,* 199 Cal.App.3d 868, did not expressly follow *Bennett,* we were and are in agreement with the principles expressed therein. Thus, we believe our opinion in *Johnson* is a correct statement of the law and continue to adhere to it.

In light of the logistical and institutional constraints upon the role of defense counsel in a jury trial, we think it would be unreasonable to find trial counsel "incompetent" for objecting to the evidence in the face of unfavorable case law but failing to offer the trial court a law review analysis of the issue. It is well recognized trial counsel normally lacks the opportunity for reflective contemplation afforded appellate counsel. We conclude there is no merit to Church's claim his trial counsel was incompetent for failing to advance his objection to the prior conviction more aggressively than was done at trial.

III, IV*

. . . . . . . . . . . . . . . . . .

* See footnote at page 1151, *ante.*

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Work, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 1990.