[No. F025716. Fifth Dist. Jan. 28, 1997.]

In re DAVID D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
DAVID D., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Anna Bannerman-Richter, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STONE (W. A.), J.—

FACTS

On the evening of December 27, 1995, David and his teenage friends vandalized numerous Madera businesses and residences with spray paint. One victim observed their activities and noticed they were driving a black or dark maroon vehicle. She gave the police a description; Officer Jeffrey Smith soon located and followed a vehicle matching said description. The vehicle immediately accelerated and its occupants squatted down in their seats. Officer Smith activated his siren and began pursuit. When he caught up with the vehicle, it had been abandoned in a driveway. He searched the area and found David hiding against a fence. David's hands were splattered with red and blue paint.

Police searched the vehicle and found two cans of Crylon red spray paint and caps for three cans of red, blue, and green paint. They found additional cans of blue and green spray paint in nearby dumpsters. Another occupant of the car was later apprehended; he also had red, blue, and green spray paint on his hands.

Officer Trobaugh investigated the various locations which had been damaged. She testified each had fresh paint in red, blue, green, black, or brown. The colors and writings were consistent, with the words "mystic" and "CYS" inscribed at each location. David subsequently admitted he was involved with the "CYS" tagging team and the name "mystic" was his graffiti tag moniker.

A juvenile court supplemental petition alleged David to be a minor within the meaning of Welfare and Institutions Code sections 602 and 777, subdivision (a). It alleged five counts, to wit, count I, a felony: thirty-four instances of defacing property with graffiti, with damages totaling between $5,000 and $50,000 (Pen. Code, § 594, subd. (b)(2));[1] count II, a felony: conspiracy to commit vandalism (§§ 182, subd. (a)(1) and 594, subd. (b)(2)); count III, a misdemeanor: obstructing a police officer (§ 148, subd. (a)); count IV, a misdemeanor: violation of a probation term by possessing spray paint; and count V, a misdemeanor: violation of a probation term by missing curfew. David denied the allegations.

David demurred to counts I and II, contending the petition erroneously alleged felonies by improperly aggregating separate misdemeanor offenses.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

Following a hearing that primarily addressed whether the doctrine set out in *People* v. *Bailey* (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39] allowed aggregation under these facts, the court overruled the demurrer, noting "*Bailey* still is good law."

At a contested jurisdictional hearing the court found David had committed all five counts. He was committed to the California Youth Authority for twelve years four months, which the court computed by imposing an aggravated principal term of three years for count I, staying a term of three years for count II, staying eight months and imposing four months of a one-year term for count III, and adding an aggregated term of nine years for fifty-four *prior* misdemeanor violations of section 594, subdivision (b)(2).[2] The court also ordered David to pay $17,525.74 as restitution to the victims. This amount constituted $8,010 for the current incidents and $9,515.74 for the 54 counts from the earlier petition. Additional restitution fines and penalties, not relevant to this appeal, were also imposed.

## DISCUSSION

David raises two issues on appeal. He contends (1) the court erroneously aggregated separate misdemeanor offenses in order to create one felony, and (2) his convictions are not supported by sufficient evidence.

## I

### *The Bailey Doctrine*

In *People* v. *Bailey, supra,* 55 Cal.2d 514, defendant, a single mother, reported to the county welfare department that she received $15 per month from Edward Connery, a boarder living in her home. When advised the department would assume Connery played the role of stepfather if he remained, defendant reported falsely that he had moved out. Defendant thereafter received a number of monthly welfare payments, each less than $200, but totaling more than $200 in the aggregate. (55 Cal.2d at pp. 515-516.) The Supreme Court concluded that her conviction of grand theft was proper, noting that several instances of theft may be cumulated into one felony count if the evidence disclosed one overall scheme. "[W]here a number of takings, each less than $200 [the amount distinguishing felonies

---

[2]The nine-year term consists of six months for each of fifty-four counts with four months of each count stayed. These counts stem from a petition dated in January 1995. At that time, the court stayed imposition of the sentence.

from misdemeanors at that time] but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft. [Citations.]" (*Id.* at p. 519.) Determining whether the instances of wrongful conduct constitute one or multiple offenses "depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. . . ." (*Ibid.*)

David contends the holding in *People* v. *Bailey, supra*, 55 Cal.2d 514 is limited to theft offenses and, therefore, aggregation of vandalism incidents into one felony count is erroneous. He cites two cases in which the court expressly declined extension of the *Bailey* doctrine beyond theft. In *People* v. *Neder* (1971) 16 Cal.App.3d 846 [94 Cal.Rptr. 364], the defendant committed three acts of forgery. The court rejected the argument that he committed a single offense, concluding ". . . we do not feel that the *Bailey* doctrine should be extended to forgery. That doctrine was developed for the crime of theft . . . ." (*Id.* at p. 852.) In so deciding, the *Neder* court noted a crucial distinction between theft and forgery offenses. Unlike theft, forgery "is not concerned with the end, i.e., what is obtained or taken by the forgery; it has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud. . . . The designation of a series of forgeries as one forgery would be a confusing fiction." (*Id.* at pp. 852-853.)

David's second citation, *People* v. *Drake* (1996) 42 Cal.App.4th 592 [49 Cal.Rptr.2d 765], expressly follows *Neder*. Drake was a physician who submitted false Medi-Cal payment forms for services to five different patients. He was convicted of five counts of fraud (presenting false claims). He argued the *Bailey* doctrine precluded his conviction for more than one count. The court disagreed: "We likewise decline to extend the *Bailey* doctrine beyond theft offenses. [This] case is analogous to *Neder* where the essence of the offense is the means, rather than the ends, of the crime. . . ." (42 Cal.App.4th at p. 597.) To this list we add *People* v. *Woods* (1986) 177 Cal.App.3d 327 [222 Cal.Rptr. 868], in which the court rejected application of the *Bailey* doctrine to consolidate several counts of forgery.

David analogizes his vandalism offenses with those discussed in *Neder*, *Drake*, and *Woods*, and urges this court to reject the People's contention that we should extend *Bailey* to a case of vandalism. Before we reach the issue,

however, we examine an additional factor which the previous authorities have not emphasized, but which we think is important—whether the count involved crimes against a single victim or multiple victims.

Application of *People* v. *Bailey* has been limited not only to the crime of theft, but generally to thefts involving a single victim.[3] (*People* v. *Gardner* (1979) 90 Cal.App.3d 42 [153 Cal.Rptr. 160]; *People* v. *Richardson* (1978) 83 Cal.App.3d 853 [148 Cal.Rptr. 120]; *People* v. *Ramirez* (1980) 109 Cal.App.3d 529 [167 Cal.Rptr. 174]; *People* v. *Packard* (1982) 131 Cal.App.3d 622 [182 Cal.Rptr. 576]; *People* v. *Kronemyer* (1987) 189 Cal.App.3d 314 [234 Cal.Rptr. 442]; *People* v. *Slocum* (1975) 52 Cal.App.3d 867 [125 Cal.Rptr. 442]; *People* v. *Sullivan* (1978) 80 Cal.App.3d 16 [145 Cal.Rptr. 313].) Although never expressly cited as an element of its doctrine, *Bailey* itself implies aggregation may occur only when the offense was committed against one victim. "[W]here as part of a single plan a defendant makes false representations and receives various sums from the *victim* the receipts may be cumulated to constitute but one offense of grand theft. . . ." (*People* v. *Bailey, supra*, 55 Cal.2d at p. 518, italics added.) The authorities upon which *Bailey* relies to reach its conclusion describe offenses against a single victim,[4] and the court later notes aggregation is inappropriate, even though the thefts occurred against a single person, if the facts fail to establish one plan or intention. (55 Cal.2d at p. 519.) This observation presupposes a single victim.

Even if we were to assume a persuasive analogy between theft and vandalism, application of the *Bailey* doctrine to these facts still fails. In *People* v. *Church* (1989) 215 Cal.App.3d 1151 [264 Cal.Rptr. 49], disapproved on other grounds in *People* v. *Bouzas* (1991) 53 Cal.3d 467, 477-480 [279 Cal.Rptr. 847, 807 P.2d 1076], the defendant engaged in a crime spree,

[3]We do not intend to imply, however, that the *Bailey* doctrine can never be appropriate to a theft or thefts from multiple victims. See *People* v. *Garcia* (1990) 224 Cal.App.3d 297, 308 [273 Cal.Rptr. 666], and its discussion of *People* v. *Bauer* (1969) 1 Cal.3d 368 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].

[4]These citations include: *People* v. *Robertson* (1959) 167 Cal.App.2d 571 [334 P.2d 938]; *Dawson* v. *Superior Court* (1956) 138 Cal.App.2d 685 [292 P.2d 574]; *People* v. *Lima* (1954) 127 Cal.App.2d 29 [273 P.2d 268]; *People* v. *Fleming* (1934) 220 Cal. 601 [32 P.2d 593]; *People* v. *Howes* (1950) 99 Cal.App.2d 808 [222 P.2d 969]; *People* v. *Yachimowicz* (1943) 57 Cal.App.2d 375 [134 P.2d 271]; *People* v. *Dillon* (1934) 1 Cal.App.2d 224 [36 P.2d 416]; *People* v. *Bratton* (1932) 125 Cal.App. 337 [14 P.2d 125]; *People* v. *Sing* (1919) 42 Cal.App. 385 [183 P. 865]. Some cases include several counts, each alleging a different victim. However, the error contended by those defendants was that multiple transactions comprising a particular count should not have been aggregated. Furthermore, we direct attention to the *Bailey* court's reliance upon *People* v. *Sing*, in which the court held "[t]he law is that if the different asportations from the *same owner* are prompted by one design, one purpose, one impulse, they are a single act, without regard to time." (42 Cal.App. at p. 396, italics added.)

stealing items from four separate offices located in the same business complex. The *Church* court found the *Bailey* doctrine inapplicable, holding "[b]oth *Bailey* and . . . *People* v. *Slocum* . . . , involved a set of circumstances entirely different from those at issue in this case. *Slocum* involved a person convicted of Medi-Cal fraud arising again from a single scheme to· obtain money from a single victim over a prolonged period of time. Neither *Bailey* nor *Slocum* lends any support to [defendant]. If anything, these cases illustrate the validity of separate charging of thefts from four separate offices, the entry to each requiring an individual act of force." (*People* v. *Church, supra,* 215 Cal.App.3d at p. 1158.)

Likewise, in *People* v. *Garcia, supra,* 224 Cal.App.3d 297, the defendant was charged with four counts of grand theft committed against multiple victims. He cited several cases to support his argument *for* aggregation of the offenses into one count. Except for two cases (*People* v. *Brooks* (1985) 166 Cal.App.3d 24 [210 Cal.Rptr. 90] and *People* v. *Columbia Research Corp.* (1980) 103 Cal.App.3d Supp. 33 [163 Cal.Rptr. 455], which we shall discuss shortly), the court brushed aside these authorities because they dealt with crimes with only one victim. (*People* v. *Garcia, supra,* 224 Cal.4th at p. 308.)

We find *Church* and *Garcia* to be particularly persuasive. In those cases the defendants stole property from multiple victims. Here, David and his friends spent an evening tagging, rather than stealing, property throughout the City of Madera, causing damage to multiple victims. As *Church* and *Garcia* aptly conclude, one limitation of the *Bailey* doctrine is its inapplicability to offenses involving multiple victims.

In its 35-year history, *Bailey* has been applied only twice to theft cases involving multiple victims. (*People* v. *Brooks, supra,* 166 Cal.App.3d at p. 24; *People* v. *Columbia Research Corp., supra,* 103 Cal.App.3d Supp. 33.) Both cases were articulately criticized in *People* v. *Garcia, supra,* 224 Cal.App.3d at pages 308-309, which noted both *Brooks* and *Columbia* cited *Bailey* to prohibit *multiple punishments* for a *single offense* committed incrementally. "When a crime arising out of the same transaction is one against the property interests of several persons, rather than one of violence, only a single punishment is permissible as opposed to successive punishments for each theft. [Citation.]" (*People* v. *Columbia Research Corp., supra,* 103 Cal.App.3d at p. Supp. 40.) However, as the *Garcia* court notes, prohibition against multiple sentences for the commission of one crime is not the essence of the *Bailey* doctrine.

David's crimes did not arise out of the "same transaction"; they arose out of 34 "transactions," one occurring each time he or a co-perpetrator sprayed

an item of property. He and his friends drove throughout the city, tagging property they happened upon which appeared isolated and safe from witnesses. In our view, each tagging incident clearly represents a separate offense affecting a different victim.

Although we have determined the *Bailey* doctrine does not apply here, we must next examine David's sentence in light of our preceding analysis.

Clearly, the felony conviction must be reversed. Our dilemma thus focuses upon appropriate disposition of the 34 separate tagging incidents. The People suggest we modify the felony into 11 misdemeanors, each signifying a separate incident it considers adequately proven at trial. However, the People concede it found no authority permitting such action, and neither have we.[5] For this reason, we select a different course.

We will remand the case to the juvenile court with instructions to provide the People an opportunity to amend the petition according to proof. The juvenile court can then conduct a new dispositional hearing in conformity with that document. We note that David's briefing acknowledged the trial court "made findings for 25 of the 34 'counts.'" He makes no argument these findings are invalid or defective[6] and our review of the transcript comports with his tally.[7]

## II*

### *Sufficiency of the Evidence*

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5]The People direct us to section 1260, which provides: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances." Nevertheless, we find no precedent for changing one felony conviction into multiple misdemeanors.

[6]David does raise a general claim of insufficient evidence. As we discuss in the unpublished portion of this opinion, the claim has no merit.

[7]Phrased almost as an afterthought, David suggests " '[p]erhaps a weightier argument for reversal rests on the fact that because [he] was not properly charged, he could not properly and intelligently defend himself.' " We decline to address the argument. It is well settled "[w]here a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion. [Citations.]" (*People* v. *Callegri* (1984) 154 Cal.App.3d 856, 865 [202 Cal.Rptr. 109].)

*See footnote, *ante*, page 304.

## DISPOSITION

The judgment is reversed and remanded to the juvenile court with instructions to provide the People an opportunity to amend the petition according to proof and to conduct a new dispositional hearing.

Ardaiz, P. J., and Buckley, J., concurred.