Filed 7/25/14  P. v. Goliath CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049025 |
| v. | (Super. Ct. No. 04WF0551) |
| ROBERT JOHN GOLIATH, | O P I N I O N |
| Defendant and Appellant. | |

* * *

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Reversed in part and affirmed in part with modifications.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

Defendant Robert John Goliath pleaded guilty to 17 counts but now seeks reversal of nine of his convictions, including: (1) two convictions that are lesser included offenses of other more serious convictions, and (2) seven out of eight grand theft convictions, which allegedly should have been treated as one crime under *People v. Bailey* (1961) 55 Cal.2d 514. We rejected these contentions the first time defendant raised them because he had not obtained a certificate of probable cause pursuant to Penal Code section 1237.5.[1] (See *People v. Goliath* (July 15, 2010, G041315) [nonpub. opn.] (*Goliath I*).) Following *Goliath I*, defendant successfully petitioned for a writ of habeas corpus, premised on the ineffective assistance of defendant's prior counsel in failing to seek a certificate of probable cause. (See *Goliath v. Cate* (C.D.Cal. June 6, 2013, No. SACV 12-117) 2013 U.S. Dist. Lexis 83473 [magistrate's report]; *Goliath v. Cate* (C.D.Cal. June 11, 2013, No. SACV 12-117) 2013 U.S. Dist. Lexis 83503 [granting writ].) The trial court then issued the certificate and we are therefore presented with the merits of defendant's claims that certain convictions should be reversed. We agree with nearly all of defendant's contentions and reverse eight of his convictions.

FACTS[2]

A March 2004 felony complaint charged then 17-year-old defendant with 11 counts. The first five counts related to an incident on or about October 17, 2003, involving victim Philip Kurniawan: count 1 — kidnapping to commit robbery (§ 209, subd. (b)(1)); count 2 — kidnapping during commission of carjacking (§ 209.5, subd. (a)); count 3 — kidnapping (§ 207, subd. (a)); count 4 — second degree robbery of

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     Rather than reinventing the wheel, we will simply restate relevant portions from the facts section in *Goliath I*.

personal property (§§ 211, 212.5, subd. (c)); and count 5 — carjacking (§ 215, subd. (a)). Two counts related to separate thefts of his father's firearms (§ 487, subd. (d)(2)): count 6 — a September 23, 2003 theft of "the firearm of John G."; and count 11 — a September 18, 2003 theft of "the firearm of John G." Four more counts arose out of an October 26, 2003 incident: count 7 — second degree vehicle burglary (§§ 459, 460, subd. (b)); count 8 — attempted unlawful taking of a vehicle (§ 664; Veh. Code, § 10851, subd. (a)); count 9 — possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); and count 10 — possession of burglary tools (§ 466). The complaint further alleged as to counts 1 through 5 that, pursuant to section 12022, subdivision (b)(1), defendant personally used a knife, a dangerous and deadly weapon, in the commission and attempted commission of the offenses.

The first amended information included six new counts — one count for each additional firearm stolen from defendant's father on September 18 and September 23, 2003 (eight total weapons and eight total counts).

In May 2007, defendant filed an advisement and waiver of rights for a felony guilty plea and entered his guilty plea as to all counts and enhancements in the first amended information. The defense strategy was to request the court to sentence defendant to probation on the most serious counts (based on the kidnapping, carjacking, and robbery of Kurniawan) and sentence defendant to the maximum term available on the determinate counts. In essence, defendant threw himself on the mercy of the court, citing as mitigating factors for his conduct his age at the time of the offenses (16), the abuse he suffered as a child, and his addiction problems.

Before accepting defendant's plea, the court emphasized there were "no promises as to what . . . the court will do in terms of sentencing. And I indicated to you there is a very strong, realistic possibility that you could be spending the rest of your life in prison, based on the nature of these charges and based on your guilty plea." The court also confirmed defendant was pleading guilty to a separate felony (possession of a

3

hypodermic syringe at county jail) and misdemeanor (damaging property at the county jail) relating to conduct occurring after his confinement; the court indicated these circumstances were "not very impressive or persuasive to me."

The court explained on the record defendant's strategy: "The defense wants to try to obviously avoid a life sentence on this case, and they are willing . . . to waive any conduct credits, waive any 654 sentencing issues, in order to get a higher determinate term . . . ."

Defendant, in his own handwriting, provided the following factual basis for his guilty plea (as to relevant counts): "In Orange County, California, on September 23, 2003, I unlawfully stole five (5) firearms from John G. with intent to permanently deprive. Also in Orange County on September 18, 2003, I stole three (3) firearms from John G. with intent to permanently deprive. Also in Orange County on October 26, 2003, I unlawfully entered a locked motor vehicle which was the property of Josephine H. with intent to commit larceny."

"In Orange County, California, on [October 17, 2003,] I did unlawfully kidnap and carry away P. Kurniawan to commit robbery, and during the commission of and to facilitate a carjacking did unlawfully kidnap P. Kurniawan who was not a princip[al] in the commission of the carjacking, and by instilling fear did forcibly and unlawfully steal, take, hold, detain and arrest P. Kurniawan, and did unlawfully take P. Kurniawan into another county or part of Orange County, and did unlawfully by means of force and fear take the personal property against the will of and from the person, possession or immediate presence of P. Kurniawan," "and did feloniously and unlawfully take a motor vehicle against the will of and from the person, possession and immediate presence of P. Kurniawan, who was the driver of the motor vehicle, with the intent to temporarily or permanently deprive P. Kurniawan of possession. I personally used a knife, a dangerous and deadly weapon, in the commission of these offenses."

4

The court rejected defendant's plea for leniency. The court found all of defendant's conduct on the night of Kurniawan's kidnapping to be "too much" to exercise leniency. The court also cited defendant's criminal history and failure to comport himself in jail. The court noted: "[L]egally I think there was an issue whether I can even [sentence defendant to probation on the Kurniawan counts], but I strongly considered it. I do not think there [are] any cases on point because they contradict each other."

The court sentenced defendant to two consecutive life terms for counts 1 and 2. The court then explained defendant must serve a minimum of seven years before parole eligibility on each count, thus resulting in a total minimum of 14 years in prison before parole eligibility.

The court struck the section 12022, subdivision (b)(1), deadly weapon enhancements for the purposes of sentencing. The court stayed execution of sentence on counts 3 (kidnapping), 4 (second degree robbery), and 5 (carjacking) pursuant to section 654. As to counts 6, 7, 9, and 11 (counts 6 and 11 were grand theft counts), the court sentenced defendant to the midterm of two years and ran those sentences concurrent to the life sentences. As to count 8, the court sentenced defendant to the midterm of one year and ran this sentence concurrent to the life sentences. As to count 10 (a misdemeanor), the court suspended imposition of sentence. And as to counts 12 through 17 (the other six grand theft counts), the court stayed execution of sentence pursuant to section 654.

In *Goliath I*, we modified the judgment with regard to the number of days of defendant's presentence conduct credit but otherwise affirmed with regard to defendant's numerous contentions of error.

5

DISCUSSION

*Convictions for Simple Kidnapping and Carjacking*

In an unorthodox attempt to avoid the imposition of a life sentence, defendant pleaded guilty to all counts alleged in the amended information and attempted to waive all of his rights to contest or appeal his prospective sentence on technical grounds. Two of defendant's convictions, simple kidnapping (count 3) and carjacking (count 5), are necessarily included offenses of counts 1 and 2. (*People v. Lewis* (2008) 43 Cal.4th 415, 518, overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919-920 ["simple kidnapping is a necessarily included offense of kidnapping to commit robbery"]; *People v. Contreras* (1997) 55 Cal.App.4th 760, 762 [carjacking is lesser included offense within crime of kidnapping to facilitate carjacking].) "[M]ultiple convictions may not be based on necessarily included offenses arising out of a single act or course of conduct." (*People v. Lewis*, *supra*, 43 Cal.4th at p. 518; see *People v. Ortega* (1998) 19 Cal.4th 686, 692-693.) Rather than refusing to convict defendant of simple kidnapping and carjacking, the court stayed execution of sentence on these counts pursuant to section 654.

The Attorney General defends this result by emphasizing defendant's intentional attempt to maximize his potential determinate sentence to convince the court to grant probation on the more serious offenses. It is true that where a bargain is struck "to avoid a longer maximum period of confinement," a defendant waives his or her right to undercut the bargain by claiming he was wrongly convicted of both greater and lesser offenses. (*In re Giovani M.* (2000) 81 Cal.App.4th 1061, 1065; see also *People v. Hester* (2000) 22 Cal.4th 290, 295 ["Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction"].) But here, there was no bargain. Defendant threw himself on

6

the mercy of the court. And the court rejected defendant's attempt to avoid an indeterminate sentence.[3]

We agree with defendant that the convictions on counts 3 and 5 must be reversed. Of course, defendant does not stand to reduce his time in prison by successfully reversing these convictions because execution of sentence was stayed by the court on these counts.

*Eight Convictions for Thefts of Firearms from Father*

In his guilty plea, defendant admitted he stole eight firearms from his father — three on September 18 and five on September 23. The original information charged defendant with two counts of grand theft (§ 487) based on the theft of firearms, one count for each day. The amended information included a separate count for each firearm; defendant pleaded guilty to all eight counts. Even though the court ran the sentences on the first two counts (counts 6 and 11) concurrently and stayed execution of sentence pursuant to section 654 with regard to the remaining six counts (counts 12 through 17), defendant asserts error as to seven of his eight convictions because all eight counts supposedly reflect only a single violation of section 487.

"Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted

_____

[3] Similarly, referencing the record from *Goliath I* (which is not before us, and has not been made the subject of a separate request for judicial notice — the Attorney General simply requests in its brief that this court take judicial notice of the prior case's record), the Attorney General claims defendant waived his right to appeal as part of his guilty plea. Assuming defendant attempted to waive his right to appeal questions of lesser included offenses or duplicative convictions, case law authorizing waivers of rights to appeal are based on negotiated plea agreements. (See *People v. Panizzon* (1996) 13 Cal.4th 68, 79-80, 85-86.) The contractual rationale of living up to one's end of a bargain is simply inapplicable in the instant case. Defendant did not reach a sentencing agreement with the prosecutor and his attempt to curry the court's favor was unsuccessful.

upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." (*People v. Bailey*, *supra*, 55 Cal.2d at p. 519.) "The *Bailey* doctrine applies as a matter of law only in the absence of any evidence from which the jury could have reasonably inferred that the defendant acted pursuant to more than one intention, one general impulse, or one plan." (*People v. Jaska* (2011) 194 Cal.App.4th 971, 984.)

We conclude defendant is correct with regard to counts 12 through 17, but not with regard to counts 6 and 11. The thefts occurred five days apart. Moreover, the stolen items at issue here are firearms rather than a discrete pool of money. Stealing separate caches of firearms on dates five days apart is more indicative of two separate intentions, impulses, or plans than a series of thefts involving the same financial assets. (E.g., *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 363-364 [looting of estate assets over four-day period was single grand theft].) In sum, there is evidence to suggest two (but not more than two) intents, impulses, or plans in connection with the grand theft counts.

While this appeal was pending, our Supreme Court issued *People v. Whitmer* (July 24, 2014, S208843) ___ Cal.4th ___). Interpreting and refining *People v. Bailey*, *supra*, 55 Cal.2d 514, *Whitmer* held that "a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme." (*Whitmer*, at p. ___ [at pp. 1-2].) *Whitmer*, however, declined to apply retroactively its "new rule." (*Id*. at p. ___ [at p. 2].) Our holding is consistent with the law as stated in *Whitmer*, and in our application of pre-*Whitmer* law to reach this result.

DISPOSITION

We reverse the convictions for counts 3, 5, 12, 13, 14, 15, 16, and 17 and modify the judgment by striking those convictions. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.