Filed 10/6/15  P. v. Butcher CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN HUMPHREY BUTCHER,<br><br>    Defendant and Appellant. | B256344<br><br>(Los Angeles County<br>Super. Ct. No. YA080572) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eric C. Taylor, Judge.  Affirmed.

Hodges and Associates and A. Clifton Hodges for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Michael C. Keller and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant John Humphrey Butcher appeals from the judgment entered following his no contest plea to two counts of grand theft by embezzlement (Pen. Code,[1] § 487, subd. (a)) and admission to various enhancement allegations based on his unlawful takings (§§ 186.11, subd. (a), 12022.6, subd. (a)(2), 1203.045, subd. (a), 1170, subd. (h)(3), 803, subd. (c)). Among other arguments, Butcher contends the trial court erred in convicting him of two counts of grand theft and in imposing consecutive sentences with associated enhancements based on his multiple convictions. Butcher also claims his plea and admissions were involuntary and the result of ineffective assistance of counsel because he was not properly advised of the penal consequences of his plea. We affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**I.      The Preliminary Hearing**

Butcher was employed as the controller at MRI Centers, Inc., a small medical practice, for approximately 15 years. Among other duties, Butcher was responsible for maintaining the general ledger, paying the company's bills, and submitting payroll information to the company's outside payroll service. Carrie Silvano was a certified public accountant whose firm was responsible for preparing tax returns and financial statements for MRI Centers. In or about September 2010, Silvano met with Butcher to discuss the company's payroll taxes for the prior year. Butcher provided Silvano with the 2009 payroll tax returns, but told Silvano that the returns would not include the total payroll amount. Butcher explained that, at times, he had issued manual paychecks to the employees of MRI Centers rather than using the outside payroll service. Although Butcher withheld payroll taxes from the checks that he directly issued to employees, he did not remit those taxes to the federal or state tax authorities.

Silvano undertook a review of MRI Centers' financial records. Silvano's review showed that, between January 19, 2006 and July 9, 2010, Butcher used the company's bank account to pay each credit card bill issued for an American Express card held in the

---

[1]      All further statutory references are to the Penal Code.

name of Butcher and MRI Centers. While a number of charges on the American Express card were related to the company's business, Butcher made more than $100,000 in unrelated personal charges that were paid for by MRI Centers. Silvano's review further showed that, between January 5, 2006 and August 31, 2010, Butcher issued over $500,000 in checks from the company's bank account to himself, while falsely representing in the general ledger that a number of those checks had been issued to legitimate business vendors. Silvano's review also showed that Butcher had deposited approximately $57,000 in funds back into the company's bank account. According to Silvano's preliminary calculations, after crediting Butcher his salary and deposits, the total amount that Butcher wrongfully took from MRI Centers between January 2006 and August 2010 was $293,217.18.

## II.     The Information

In an information filed on November 29, 2011, the Los Angeles County District Attorney charged Butcher with two counts of grand theft by embezzlement in violation of section 487, subdivision (a) (Counts 1 and 3).[2] Count 1 alleged that the offense was committed between January 19, 2006 and July 9, 2010. Count 3 alleged that the offense was committed between January 5, 2006 and August 31, 2010. As to each count, it was alleged that Butcher took property whose value exceeded $100,000 under section 1203.045, subdivision (a), and exceeded $150,000 under 12022.6, former subdivision (a)(2). It also was alleged that Butcher committed two or more related felonies, a material element of which was fraud or embezzlement and involving a pattern of related felony conduct within the meaning of section 186.11, subdivision (a), which required state prison custody time to be served pursuant to section 1170, subdivision (h)(3). In addition, it was alleged that the offense in each count was not discovered until September 2, 2010 because Butcher fraudulently concealed the offense within the meaning of section 803, subdivision (c).

---

[2]     The information did not contain a Count 2.

### III.    The Plea Hearing

On April 4, 2012, in the presence of his counsel, Butcher entered an open plea of no contest to Counts 1 and 3 and an admission of each enhancement allegation. At the plea hearing, the prosecutor advised Butcher of the nature of the charges against him, stating: "You're being charged . . . with two counts of grand theft by embezzlement. As to each count, . . . it's being charged against you five separate allegations. Two of these allegations talk about the fact that your conviction under these allegations would require you to serve a prison sentence. The other three allegations are allegations that . . . increase your sentence because of the amount of money that was taken. The maximum sentence that you could receive on your case today is nine years of state prison." The prosecutor further stated: "Now, it's my understanding you want to resolve this case by pleading to both counts and by pleading to all of the allegations. And we're going to continue the sentencing, get a probation report, and then we're going to have arguments. Your attorney is going to argue for one thing; I'm going to argue for most likely something else. But it's ultimately going to be up to the judge to decide what your sentence is going to be." Butcher indicated that he understood the nature of the charges against him and that he wanted to enter the plea.

The prosecutor next advised Butcher of his constitutional rights, including his right to a jury trial, his right of confrontation, and his privilege against self-incrimination, and Butcher agreed to waive each of those rights. The prosecutor also advised Butcher of the possible sentencing consequences of his plea, stating: "In this case, the judge has different options on what your sentence could be. If he sentences you to probation, then there will be terms of your probation. And if you violate your terms, you could be sent to prison for up to nine years. If you are sentenced to prison, when you're released from prison, you'll be on either parole or . . . what's called post-release community supervision. And if you violate the terms of your parole or post-release community supervision, you could be sent back to county jail for 180 days for each violation. The charges you're pleading to will increase your sentence on future cases because they are felony convictions." Butcher acknowledged that he had consulted with his attorney and

4

that he understood the consequences of his plea.  He also acknowledged that he had not been made any promises in exchange for his plea or admissions.

Butcher thereafter pleaded no contest to Counts 1 and 3.  He also admitted each enhancement allegation set forth in the information, including the allegation that, "as to both counts that you just pled to that these crimes are a violation of Penal Code section 186.11 which requires prison custody time to be served."  Butcher's attorney joined in the plea and waiver and stipulated to a factual basis for the plea based on the probation report, police reports, and preliminary hearing transcript.  The trial court found that Butcher had knowingly and intelligently entered into the plea and that there was a factual basis for the plea.  Based on the plea and admissions, the court found Butcher guilty of two counts of grand theft by embezzlement as charged in Counts 1 and 3.  The court set the matter for a restitution and sentencing hearing, and ordered an updated probation report for Butcher to be submitted prior to the hearing.

## IV.    The Post-Plea Proceedings

Following several continuances, the trial court held a restitution hearing between March and May 2013.  At the hearing, Silvano testified that, based on her most recent review of MRI Centers' financial records, the total amount that Butcher wrongfully took from the company between 2006 and 2010 was $477,081.  According to Silvano, this amount consisted of the personal charges that Butcher made on the American Express card and the money that was paid to Butcher from MRI Centers' bank account, reduced by the net earnings reported on his W-2 forms and the money that he deposited back into the company's bank account during that time period.  Silvano also testified that, in response to her calculations, Butcher prepared his own calculations of the total amount that he had taken from MRI Centers and "came back with about six or seven different reasons and explanations of why he took the money out."

Butcher testified on his own behalf at the restitution hearing.  He admitted that he wrongfully took money from MRI Centers, but disputed the amount calculated by Silvano.  According to Butcher, some of the charges on the American Express card paid

5

for by MRI Centers were for gas, mileage, and other costs that Butcher incurred in using his personal vehicle for company business. Some of the checks that Butcher issued to himself from MRI Centers' bank account were payment for vacation and sick time that he accrued but never used during his employment. Other checks that Butcher issued to himself were reimbursement for money that he paid out of his personal bank account to cover MRI Centers' business expenses and payroll obligations at times when the company was struggling financially. Because Butcher wanted to purchase MRI Centers from the two physicians who owned it, he also saw himself as a future owner of the business and believed that it was acceptable for him to commingle personal and company funds as he deemed fit. Butcher testified that, based on the available financial records, the total amount in restitution that he owed to MRI Centers was $136,934.

At the conclusion of the restitution hearing, the trial court found that the testimony provided by Silvano was credible, and that the testimony provided by Butcher was unreliable, misleading, and replete with factual misrepresentations. The court ordered Butcher to pay restitution to MRI Centers in the amount of $477,000, and continued the matter for the sentencing hearing.

At the sentencing hearing on October 21, 2013, the prosecution recommended a sentence of five years and eight months in state prison. Defense counsel asked the court to follow the recommendation of the Probation Department and order that Butcher be placed on probation. The trial court indicated that it would sentence Butcher to a state prison term of five years and eight months, noting that "there have been no unusual circumstances . . . that would justify probation" and "this is a mandatory prison case." In addressing the monetary fine to be imposed under section 186.11 based on Butcher's multiple convictions, defense counsel argued that the two grand theft counts were "identical" because they covered the same time period, and thus, "should be treated as one felony." Defense counsel also asserted that Butcher's plea was based on an understanding that "it was a course of conduct that he was being charged with," and that if the prosecution "had charged each and every taking that was over $400 as a felony,"

6

defense counsel "would never have allowed him to plead no contest." The trial court decided to continue the sentencing hearing for further argument on this issue.

At the sentencing hearing on March 18, 2014, defense counsel made a motion to withdraw Butcher's no contest plea. Defense counsel contended that Butcher committed a single grand theft notwithstanding the multiple charges because the entire time period alleged in Count 1 was encompassed within the time period alleged in Count 3. The prosecution argued that the two counts were separate and distinct offenses as evidenced by the different methods that Butcher used to embezzle money from MRI Centers over a period of five years. The trial court denied the motion to withdraw the plea. The court then sentenced Butcher to a total term of five years and eight months in state prison, consisting of three years on Count 1, a consecutive term of eight months on Count 3, and an additional two years pursuant to section 186.11, subdivision (a). Following the sentencing hearing, Butcher obtained a certificate of probable cause and filed a timely notice of appeal.

## DISCUSSION

### I. Multiple Convictions and Punishments for Grand Theft

On appeal, Butcher argues that the double jeopardy clauses of the federal and state constitutions and applicable California case law precluded him from suffering separate convictions for the two grand theft by embezzlement charges to which he entered a no contest plea. Butcher also asserts that the trial court violated section 654 when it sentenced him to consecutive terms on the two grand theft counts and imposed an additional two-year enhancement based on his multiple convictions.

#### A. Relevant Law

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." [Citations.]' [Citation.]" (*People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227.) In *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*), however, the California Supreme

7

Court set forth the following rule for determining the circumstances under which a defendant who commits multiple thefts from a single victim may be convicted of more than one count of grand theft: "Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. [Citation.]" (*Id.* at p. 519.)

Prior to the California Supreme Court's decision in *In People v. Whitmer* (2014) 59 Cal.4th 733 (*Whitmer*), Court of Appeal decisions consistently interpreted *Bailey* to prohibit multiple convictions for grand theft where the defendant committed a series of thefts pursuant to a single plan or intention. (See, e.g., *People v. Jaska* (2011) 194 Cal.App.4th 971, 984 (*Jaska*); *People v. Tabb* (2009) 170 Cal.App.4th 1142, 1148; *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 364; *People v. Brooks* (1985) 166 Cal.App.3d 24, 31; *People v. Packard* (1982) 131 Cal.App.3d 622, 627; *People v. Gardner* (1979) 90 Cal.App.3d 42, 48.)[3] In applying this interpretation of *Bailey*, these pre-*Whitmer* cases also identified "the following types of evidence [as] relevant in determining whether a defendant acted pursuant to a single intent in committing a series of thefts: whether the defendant acted pursuant to a plot or scheme [citations]; whether the defendant stole a defined sum of money or particular items of property [citation]; whether the defendant committed the thefts in a short timespan [citation] and/or in a

---

[3]    In *Whitmer*, the California Supreme Court rejected this interpretation of *Bailey*, and held that "a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme." (*Whitmer*, *supra*, 59 Cal.4th at p. 741.) However, the *Whitmer* Court also concluded that its holding could not be applied retroactively because the "long, uninterrupted series of Court of Appeal cases . . . consistently held that multiple acts of grand theft pursuant to a single scheme cannot support more than one count of grand theft." (*Id.* at p. 742.) As the Attorney General concedes, because Butcher committed his crimes prior to the decision in *Whitmer*, the pre-*Whitmer* interpretation of *Bailey* must be applied in this case.

similar location [citation]; and perhaps most significantly, whether the defendant employed a single method to commit the thefts [citation]." (*Jaska*, *supra*, at pp. 984-985, fn. omitted.)  In general, "[w]hether multiple takings are committed pursuant to one intention, one general impulse, and one plan is a question of fact for the jury based on particular circumstances of each case.  [Citations.] . . . The *Bailey* doctrine applies as a matter of law only in the absence of any evidence from which the jury could have reasonably inferred that the defendant acted pursuant to more than one intention, one general impulse, or one plan.  [Citation.]" (*Id*. at pp. 983-984, fn. omitted.)

Even where a defendant may be properly convicted of more than one offense, section 654[4] "bars multiple punishment for separate offenses arising out of a single occurrence when all of the offenses were incident to one objective." (*People v. Cowan* (2010) 50 Cal.4th 401, 498.)  "'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507, italics omitted.)  "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence. [Citation.]" (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

### B.    Butcher's Multiple Convictions and Sentences Were Proper

Butcher contends that, under the pre-*Whitmer* interpretation of *Bailey* and its progeny, the trial court erred in convicting him of two counts of grand theft because the record showed that he acted pursuant to a single scheme, plan, or course of conduct in embezzling money from his former employer, MRI Centers.  For similar reasons, Butcher

---

[4]    Section 654 states, in pertinent part, that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

claims that the consecutive terms imposed by the trial court on the two grand theft counts violated section 654, and that the sentence enhancements imposed by the trial court based on his multiple convictions for grand theft were erroneous and must be stricken. Based on the record before us, we conclude that these contentions lack merit.

First, Butcher's claim that the trial court could only convict him of a single count of grand theft under *Bailey* is inconsistent with his plea. In addition to pleading no contest to two separate grand theft counts, Butcher admitted each enhancement allegation set forth in the information, including the enhancement alleged under section 186.11. Pursuant to section 186.11, Butcher admitted that he "commit[ed] two or more related felonies, a material element of which is fraud or embezzlement, which involve a pattern of related felony conduct, and . . . the taking of . . . more than one hundred thousand dollars ($100,000)." (§ 186.11, subd. (a).) Butcher thus admitted to committing multiple counts of grand theft as part of his open plea. (See *People v. Wallace* (2004) 33 Cal.4th 738, 749 [guilty or no contest plea "'admits every element of the crime charged' . . . and 'is the "legal equivalent" of a "verdict"'"]; *People v. French* (2008) 43 Cal.4th 36, 50 ["admission of an alleged enhancement is valid even if it does not include specific admissions of every factual element required to establish the enhancement"].)

Second, the evidence at the preliminary hearing was sufficient to support a finding that Butcher acted pursuant to more than one plan or intention in embezzling money from his employer over a five-year period. As to Count 1, Silvano testified that, between January 19, 2006 and July 9, 2010, Butcher incurred a significant number of unauthorized personal charges on an American Express card, which were paid for by MRI Centers. As to Count 3, Silvano testified that, between January 5, 2006 and August 31, 2010, Butcher issued a large number of checks from MRI Centers to himself, while falsifying the general ledger to reflect that these checks had been issued to legitimate vendors. At the restitution hearing held after the entry of his plea, Butcher admitted that he had used these different methods to take money from MRI Centers. He also admitted that he acted with different intentions depending on the taking. According to Butcher, some of the charges that he incurred on the American Express card were for travel-related expenses for which

10

he believed he was entitled to reimbursement. Some of the checks that Butcher issued to himself were compensation for unused vacation and sick time, while others were repayment for money that he allegedly paid out of his personal bank account to cover MRI Centers' financial obligations. Other payments that Butcher made to himself were not reimbursement for any particular expense, but rather because Butcher saw himself as a partial owner of the business entitled to commingle personal and company funds.

This case is similar to the pre-*Whitmer* decision in *Jaska*. The defendant in *Jaska* was convicted of five separate counts of grand theft by embezzlement after she stole approximately $500,000 from her employer. (*Jaska*, *supra*, 194 Cal.App.4th at p. 973.) She argued on appeal that all but one of the grand theft counts should be reversed under *Bailey* because they were based on a series of thefts committed against a single victim pursuant to a single plan. The Court of Appeal affirmed the defendant's multiple convictions for grand theft because "there was no evidence in this case that [the defendant] acted pursuant to a plan or scheme to steal a defined set of [the employer's] assets. Rather, the evidence suggests that [the defendant] stole various sums of money in an opportunistic manner, essentially whenever the need and/or occasion arose." (*Id.* at p. 985.) The court also noted that the defendant "committed numerous fraudulent acts over a four-year period" and "employed a variety of distinct methods to steal from [the employer]. She improperly withdrew money from the petty cash account, used company funds to pay her personal American Express and Visa credit card accounts, took unauthorized pay and reimbursement, and used [company] funds to make the monthly lease payments on [her vehicle]." (*Ibid.*) As the court explained, the multiple grand theft convictions "reflect the many ways in which [the defendant] abused her position of trust to embezzle money from [the employer]." (*Ibid.*)

Like the defendant in *Jaska*, Butcher employed at least two distinct methods to embezzle large sums of money from his employer: (1) he made numerous personal charges on an American Express card which were paid for in full by MRI Centers, and (2) he issued numerous checks from MRI Centers to himself while falsely representing in the company's financial records that the checks were for legitimate business purposes.

11

There was no evidence that, in employing these methods, Butcher acted pursuant to a single scheme or plan to steal a defined set of the company's assets. Rather, the evidence demonstrated that Butcher's various acts of embezzlement occurred in an "opportunistic manner" over a five-year period, and that he incurred unauthorized credit card charges and issued fraudulent checks to himself "whenever the need and/or occasion arose." (*Jaska*, *supra*, 194 Cal.App.4th at p. 985.)  Under these circumstances, *Bailey* and its progeny did not prohibit the trial court from convicting Butcher of the two grand theft counts to which he pleaded no contest, nor did it preclude the court from imposing the multiple conviction enhancements expressly admitted by Butcher as part of his plea.

For similar reasons, the trial court did not violate section 654 in imposing separate sentences on the grand theft counts, as well as the enhancement pursuant to section 186.11.  Contrary to Butcher's claim on appeal, the two grand theft counts did not arise out of a single, indivisible course of conduct within the meaning of section 654.  As discussed, Count 1 was based on Butcher's use of a corporate credit card to incur a variety of personal charges that were then paid for by MRI Centers.  Count 3, on the other hand, was based on Butcher's issuance of fraudulent checks to himself whenever he believed he was entitled to reimbursement for a work-related expense or otherwise had a need for cash.  This is not a case where Butcher made a single misrepresentation that resulted in his receipt of a series of unauthorized payments.  Instead, the evidence before the trial court showed that Butcher engaged in separate and distinct acts over a five-year period to obtain money directly from MRI Centers and to ensure that the company paid for his personal credit card usage.  The trial court accordingly did not err in sentencing Butcher to consecutive terms on the two grand theft counts and in imposing a separate two-year enhancement based on his multiple convictions.  (§ 186.11, subd. (a)(1) [section 186.11 enhancement "shall be . . . in addition and consecutive to the punishment prescribed for the felony offenses of which [the defendant] has been convicted"].)[5]

---

[5]    We likewise reject Butcher's claim that his multiple convictions and sentences for grand theft violated constitutional protections against double jeopardy.  As the California

12

## II. Voluntariness of the Plea and Admissions

Butcher contends that his plea of no contest to the grand theft charges as well as his admission of the sentence enhancement allegations must be vacated because they were involuntary. He specifically claims that he was not advised by the trial court that he was subject to a mandatory prison term based on his plea and admissions, and insists that he would not have entered into the plea had he known of the sentencing consequences.

### A. Relevant Law

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. [Citation.] As a prophylactic measure, the court must inform the defendant of three constitutional rights – the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers – and solicit a personal waiver of each. [Citations.]" (*People v. Cross* (2015) 61 Cal.4th 164, 170.) Additionally, a defendant who pleads guilty must "'be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute. . . .'" (*In re Moser* (1993) 6 Cal.4th 342, 351.) A guilty or no contest plea is valid as long as the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances. (*People v. Mosby* (2004) 33 Cal.4th

Supreme Court has explained, "'[t]he Double Jeopardy Clause "protects against a *second prosecution* for the same offense after acquittal. It protects against a *second prosecution* for the same offense after conviction. And it protects against multiple punishments for the same offense." [Citation.]' [Citation.] The first two categories of protection afforded by the double jeopardy clause, by their express terms, are clearly not implicated [where] we are directly concerned only with multiple convictions in a unitary trial, not multiple punishments in successive unrelated criminal proceedings. Likewise, with regard to the third category of double jeopardy protection – the prohibition of 'multiple punishments for the same offense' [citation] – the [United States] Supreme Court has made clear that '[t]he [Double Jeopardy] Clause protects only against the imposition of multiple criminal punishments for the same offense … [citations] … *and then only when such occurs in successive proceedings* [citation].' [Citation.]" (*People v. Sloan* (2007) 42 Cal.4th 110, 120-121.) Because Butcher was convicted and sentenced on the two grand theft counts in the same criminal proceeding, neither federal nor state double jeopardy principles were implicated.

353, 361; *People v. Howard* (1992) 1 Cal.4th 1132, 1177 ["'the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily'"].)

A defendant may move to set aside a guilty or no contest plea for good cause at any time before entry of judgment. (§ 1018.)[6] "'To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress.' [Citations.] The defendant may not withdraw a plea because the defendant has changed his or her mind. [Citations.]" (*People v. Archer* (2014) 230 Cal.App.4th 693, 702.) "'A decision to deny a motion to withdraw a guilty plea "'rests in the sound discretion of the trial court'" and is final unless the defendant can show a clear abuse of that discretion. [Citation.] . . .' [Citations.] '"Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." [Citation.]' [Citation.]" (*Ibid.*)

### B. Butcher's Plea and Admissions Were Knowing and Voluntary

Butcher argues that his plea and admissions were involuntary because the trial court "failed to admonish [him] on the penal consequences of his admissions, i.e., that a prison term was mandatory and probation was not an option." Butcher also asserts that he was misled about his possible sentence when the prosecutor stated that he could be sentenced to probation and the trial court advised him that it would obtain a probation report prior to the sentencing hearing. Based on the totality of the record, we conclude that Butcher's plea and admissions were knowing and voluntary.

The record of the plea hearing reflects that, in the presence of his counsel, Butcher was advised of the consequences of his plea and admissions, including the permissible

---

[6] Section 1018 provides, in relevant part, that "[o]n application of the defendant at any time before judgment . . ., the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."

range of punishment. Prior to taking the plea, the prosecutor expressly advised Butcher that he was being charged "with two counts of grand theft by embezzlement," and "as to each count, . . . five separate allegations." The prosecutor further explained that "[t]wo of these allegations talk about the fact that your conviction under these allegations would require you to serve a prison sentence," and "[t]he other three allegations are allegations that . . . increase your sentence because of the amount of money that was taken." When asked if he understood the nature of the charges and the consequences of his plea, Butcher affirmed that he did. Butcher thereafter entered a plea of no contest to the two grand theft counts and admitted each enhancement allegation. With respect to the section 186.11 enhancement, the prosecutor specifically asked: "As to the allegation as to both counts that you just pled to that these crimes are a violation of Penal Code section 186.11 which requires prison custody time to be served, . . . to that allegation, do you admit or deny it?" After conferring with his counsel, Butcher responded, "I admit." On this record, Butcher clearly acknowledged and understood that he was subject to a state prison sentence as a consequence of his plea and admissions.

Butcher nevertheless contends that both the trial court and the prosecutor misled him about his possible sentence by erroneously suggesting that he might be eligible for probation. Butcher claims the trial court lacked any such sentencing discretion because a state prison term was mandatory under section 1170. While it is true that section 1170, subdivision (h) provides that where "an enhancement pursuant to Section 186.11 is imposed, an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison" (subd. (h)(3)), it also explicitly states that "[n]othing in this subdivision shall be construed to prevent other dispositions authorized by law, including . . . an order granting probation pursuant to Section 1203.1" (subd. (h)(4)). Instead, Butcher's eligibility for probation was governed by section 1203.045, which states that "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person convicted of a crime of theft of an amount exceeding one hundred thousand dollars ($100,000)." (§ 1203.045, subd. (a).) Although Butcher's plea and admissions meant that there was a

statutory presumption against probation which could only be overcome in an "unusual case," the trial court was not precluded as a matter of law from considering a grant of probation. (*Ibid.*; see also Cal. Rules of Court, rule 4.413(b) ["[i]f the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of justice would best be served,' . . . the court should apply the criteria in (c) to evaluate whether the statutory limitation on probation is overcome"].)[7] Accordingly, the prosecutor did not misrepresent the permissible range of punishment in advising Butcher that the court had "different options on what your sentence could be." Nor did the trial court make an illusory promise of probation in stating that it would request an updated probation report for Butcher prior to the sentencing hearing.

Because the totality of the record shows that Butcher was properly advised of the consequences of his plea, he has failed to demonstrate that his plea and admissions were not knowing and voluntary. The trial court therefore did not abuse its discretion in denying Butcher's motion to withdraw his plea.

## III.   Ineffective Assistance of Counsel

Butcher argues that he received ineffective assistance of counsel at his plea hearing because his attorney failed to object to his multiple convictions for grand theft on double jeopardy grounds. Butcher also asserts that his counsel was ineffective in failing to properly advise him of the sentencing consequences of his plea and admissions.

### A.   Relevant Law

"A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the

---

[7]   At the sentencing hearing, the trial court specifically addressed whether Butcher overcame the statutory limitation on probation and concluded that "there have been no unusual circumstances . . . that would justify probation" in this case. Once the trial court determined that this was not a case that would support a grant of probation under section 1203.045, subdivision (a), it was required to impose a state prison term under section 1170, subdivision (h)(3).

16

California Constitution." (*People v. Doolin* (2009) 45 Cal.4th 390, 417.) "When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009; see also *Strickland v. Washington* (1984) 466 U.S. 668, 694.) "[A] defendant who pled guilty demonstrates prejudice caused by counsel's incompetent performance in advising him to enter the plea by establishing that a reasonable probability exists that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial. [Citations.]" (*In re Resendiz* (2001) 25 Cal.4th 230, 253.)

### B. Butcher Has Failed to Show Ineffective Assistance of Counsel

Butcher claims that his attorney's "failure to raise double jeopardy in connection with the plea and sentence below must be explained as ineffective assistance of counsel." However, as discussed, the double jeopardy protections afforded by the federal and state constitutions did not preclude Butcher from suffering multiple convictions or consecutive sentences for grand theft in the same criminal proceeding. The *Bailey* doctrine likewise did not prohibit the trial court from finding Butcher guilty of the two grand theft charges to which he pleaded no contest and thereafter imposing the sentence enhancements that Butcher expressly admitted as part of his open plea. Because any objection on double jeopardy or *Bailey* grounds would have been futile, Butcher's attorney did not render ineffective assistance in failing to raise such objections at the plea hearing. (See *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["[c]ounsel is not required to proffer futile objections"]; *People v. Smithey* (1999) 20 Cal.4th 936, 992 [counsel is not ineffective in failing to object where "any objection would have been futile"].)

17

Butcher also contends that he received ineffective assistance of counsel resulting in prejudice because his attorney failed to advise him that he was subject to a state prison term based on his plea and admissions. This claim is not supported by the record. As discussed, at the plea hearing, Butcher was expressly advised in the presence of his counsel that his admission to certain sentence enhancement allegations would require him to serve any custody time in state prison. Butcher acknowledged that he understood the nature of the charges and enhancements alleged against him as well as the consequences of his plea and admissions. Butcher also acknowledged that he had a full opportunity to discuss the facts of his case, possible defenses, and consequences of his plea with his attorney, and that he did not need any additional time to consult with his attorney about the plea. There is no evidence in the record that Butcher's attorney provided him with any erroneous legal advice that caused Butcher to enter into the plea or admissions. There is also no evidence in the record that Butcher would have rejected a plea and elected to proceed to trial but for the deficient performance of his attorney.[8] (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1421 ["a defendant's self-serving statement … [regarding whether] with competent advice he or she would [or would not] have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice"].) On this record, Butcher has failed to establish that he is entitled to relief based on the ineffective assistance of counsel.

---

[8] In support of his claim that he would not have entered into a plea if he understood the sentencing consequences of his admissions, Butcher points to his attorney's statement at the sentencing hearing that "if [the prosecutor] had charged each and every taking that was over $400 as a felony, we certainly would have gone to trial," and "I would never have allowed him to plead no contest." This statement merely suggests that if Butcher had been charged with numerous counts of grand theft (as opposed to the two counts that were charged), he would have proceeded to trial. It does not, however, demonstrate that Butcher's attorney failed to advise him of the sentencing consequences of the section 186.11 and section 1203.045 enhancements, nor does it show that Butcher entered into the plea based on a mistaken belief that he would be granted probation.

## IV. Applicability of the 2011 Amendment to Section 487

Butcher asserts that a 2011 amendment to section 487, which raised the threshold amount for grand theft from $400 to $950, requires reversal of his convictions because his no contest plea to the two grand theft charges was based on the lower $400 threshold. The Attorney General concedes that the increased $950 threshold for grand theft applies retroactively to this case, but argues that Butcher's admissions that he stole more than $150,000 were adequate to sustain his convictions. In fact, Butcher pleaded no contest to two counts of grand theft, felonies, and further admitted stealing more than $150,000. We agree his pleas and the admissions were sufficient to support his convictions for grand theft under the amended threshold.

Prior to January 1, 2011, section 487, subdivision (a) provided that a defendant was guilty of grand theft if he or she stole property worth more than $400. (Stats. 2009-2010 (2010 3d Ex. Sess.) ch. 28, § 17.) Effective January 1, 2011, the Legislature amended section 487, subdivision (a) to define grand theft as the taking of property worth more than $950. (Stats. 2010 (2010 Reg. Sess.) ch. 693, § 1.) In *People v. Wade* (2012) 204 Cal.App.4th 1142, 1152, the Court of Appeal held that the increased threshold for grand theft applied retroactively to cases that were not final as of the effective date of the amendment. Because Butcher's grand theft convictions were not final when the 2011 amendment took effect, the $950 threshold applies retroactively to his case.

However, Butcher is not entitled to relief from his no contest plea because the record shows beyond a reasonable doubt that his two convictions for grand theft by embezzlement were based on his taking of property of a value that exceeded $150,000. As part of his plea agreement, Butcher expressly admitted that, as to both grand theft counts, he engaged in a pattern of felony conduct that "involved the taking of over a $150,000" pursuant to section 186.11, subdivision (a), and that he "took, damaged, and destroyed property of a value of over $150,000" pursuant to section 12022.6, subdivision (a)(2). Butcher's admissions thus establish that, in committing each crime of grand theft, he took property of a value that exceeded the amended $950 threshold. Under these

19

circumstances, any error in failing to specify in Counts 1 and 3 of the information that the amount taken by Butcher exceeded $950 was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.


ZELON, J.


We concur:


PERLUSS, P. J.


SEGAL, J.